The **VOLUNTEER STATE LIFE INSURANCE COMPANY, Appellant,**

v.

**Mabel HENSON, Appellee.**

**No. 15914.**

United States Court of Appeals
Fifth Circuit.

June 27, 1956.

E. Cage Brewer, Jr., Clarksdale, Miss., Roy A. Scruggs, Chattanooga, Tenn., Brewer & Brewer, Clarksdale, Miss., Miller, Martin, Hitching & Tipton, Chattanooga, Tenn., of counsel, for appellant.

William H. Maynard, Clarksdale, Miss., Jas. A. Blount, Charleston, Miss., Maynard, Fitzgerald & Maynard, Clarksdale, Miss., of counsel, for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, The Volunteer State Life Insurance Company, issued a mas-

536.

ter group policy of credit life insurance to Greenwood Production Credit Association for the purpose of insuring the lives of those who were indebted to the credit association. On March 17, 1954, a certificate was issued under this policy designating F. E. Henson, Sr. as an insured to the extent of $5,000, with his wife, Mabel Henson, named as beneficiary. For convenience and brevity we will sometimes refer to the insurance company as Volunteer, to F. E. Henson, Sr. as the insured, and to Mabel Henson as the beneficiary. The policy contained, among other provisions, the following:

"It is agreed that no insurance hereunder shall become effective as to any Borrower, and there shall be no liability hereunder on account of any insurance with respect to such Borrower until a certificate shall be issued and delivered to such Borrower during his lifetime and while he (or she) is in good health."

The foregoing was incorporated in the certificate and there it was also provided that:

"This insurance may not be issued to and will not be valid for persons under 18 or over 65 years of age or who are not in good health when obtaining this certificate".

The insured died July 27, 1954. In the death certificate Dr. W. E. Sheffield listed the "Disease or Condition Directly Leading to Death" as "Coronary Thrombosis", and showed "Antecedent Causes" as "Coronary Sclerosis" for ten years and "Essential Hypertension" for fifteen years. In a blank on the death certificate form for "Other Significant Conditions" the doctor inserted "Obesity".

The beneficiary furnished Volunteer proof of death of the insured, and demanded payment of the amount of $5,000. On the refusal of Volunteer to make payment, the beneficiary brought suit with diversity of citizenship the basis of Federal jurisdiction. Volunteer answered, alleging that at the time of the delivery of the certificate the insured was not in good health. Filed by Volunteer on the

same day as its answer was a motion for summary judgment. Filed with the motion was a copy of the death certificate, and an affidavit of Dr. Sheffield reciting that over the preceding eight years or more he had treated the insured who had hypertension for that period, that the insured weighed over 300 pounds, that he had told the insured of his ailment and advised him to slow down in his work, and that insured knew he had hypertension which had existed prior to the date of the insurance certificate. Volunteer also submitted in support of its motion affidavits of three other doctors, all of which said that a person who has coronary sclerosis or essential hypertension is not in sound health or good health. Two of these doctors declared that a life insurance company would reject the application for life insurance from a person found to have these ailments. The attorneys for Volunteer made an affidavit that they had seen a letter from Lyle Motley Clinic in Memphis, Tennessee, in which it was reported that the blood pressure of the insured was 210/120 in April, 1940.

The beneficiary, plaintiff in the district court, countered with a motion for summary judgment and exhibits. She produced the letter from the Lyle Motley Clinic. In addition to giving the insured's blood pressure the letter reported negative findings as to gastro-intestinal and urinary symptoms. It noted his obesity, commented upon a negative film of his chest, and reported that an electrocardiogram showed no diagnostic changes. An old ruptured disc was noted and its effects observed. The report continued, "Outside of this abnormality we found Mr. Henson in very good physical shape except, of course, being much too heavy and he is definitely against any rigid reducing routine, feeling that it might impair his health". Dr. Sheffield had executed another affidavit, this time saying he did not know the condition of the insured's health in 1954, and that so far as he knew the blood pressure of the insured at that time might have been at or near normal and he could have then

been in reasonably good health. He stated, and swore it was so, that when he filled out the death certificate he did it as a matter of routine, without intending to make a medical diagnosis, and he "could not with any degree of certainty say that" the insured "had coronary sclerosis or at that time even essential hypertension".

For the beneficiary there was also filed an affidavit of a mayor, a postmaster, a dentist, two druggists, two merchants, and four others, none of whom had any disclosed qualifications for giving a medical opinion. The makers of this affidavit stated it to be their opinion that the insured "was in excellent health prior to and during the month of March, 1954". Still another affidavit was filed by the beneficiary, this by a physician who had not, apparently, ever examined the insured as his affidavit made no reference to the insured. This physician gave it as his opinion "that a person could have essential hypertension and still be in reasonable good health if he had no other physical disabilities which were serious".

The district judge, in an oral opinion, found an absence of evidence that a man who had hypertension might not be in good health. The judge observed that "There is no substantial ground here to say that there was anything seriously wrong with the man at the time he died that he knew anything about or anybody else knew anything about except that he had a heart attack and died". The motion of Volunteer for a summary judgment was denied and overruled; the motion of the beneficiary was granted and judgment was entered in her favor against Volunteer for $5,000 with interest and costs. Volunteer has appealed.

The only error assigned is that the court granted a summary judgment for the plaintiff when it should not, and the only question before us is whether there existed a substantial issue of material fact. The court is under no duty to grant a summary judgment merely because both parties have moved for it.

Professor Moore states the principle and the reason for it in these words:

"The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.

"Good sense and sound theory, if these be distinguishable, combine to produce the rule. Good sense, because neither a single motion nor multiple motions can dissipate factual disputes. Sound theory, for at least three reasons: (1) because a party entitled to summary judgment must bear the burden of establishing the indisputability of the facts which warrant judgment in his favor; (2) while the facts, which would justify judgment for one party on a particular legal theory, may be indisputable, the facts, which would justify judgment for the adverse party on a different legal theory, may be disputed; and (3) a party may make concessions for the purpose of his motion that do not carry over and support the motion of his adversary." 6 Moore's Federal Practice, 2d ed. 2092, Par. 56.13. See F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 1954, 209 F.2d 375.

Supporting the motion of Volunteer was an affidavit of Dr. Sheffield. Supporting the motion of the beneficiary was an affidavit of Dr. Sheffield. We need not say that the one affidavit contradicts the other, but each affidavit tends to and was intended to support the theory of the party offering it. Other affidavits offered by the one side or the other create or emphasize differences between the facts asserted and the legal theories advocated by the respective parties. The factual issues are substantial and should be determined by a plenary trial. In order that such a trial may be had, the judgment is

Reversed and remanded.