Catherine L. GLENCOE, Plaintiff,

v.

TEACHERS INSURANCE AND ANNU-
ITY ASSOCIATION OF AMERICA, a
New York corporation, Defendant.

Nos. Civ.A. 2:99–0015, Civ.A. 2:99–0115.

United States District Court,
S.D. West Virginia,
Charleston Division.

Oct. 12, 1999.

William H. Scharf, Charleston, WV, for plaintiff.

Clement D. Carter, Carter & Young, Clarksburg, WV, Sean F. Murphy, David R. Weiser, McGuire, Woods, Battle & Boothe, McLean, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's Motion for Summary Judgment. For the reasons stated below, the motion is **GRANTED**.

## I. SUMMARY JUDGMENT

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [the nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Andersen* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]"

*Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.), *cert. denied*, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.*, 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn*, 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.*, 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates Defendant's motion.

## II. FACTUAL BACKGROUND

Catherine Glencoe's father was a professor at West Virginia State College. He died in March of 1991, leaving Plaintiff as the sole beneficiary of life insurance policies and retirement annuities purchased from Defendant, Teachers Insurance and Annuity Association of America ("TIAA"). This dispute arises out of the disposition of these annuities and life insurance policies to Ms. Glencoe.

It is undisputed that after Glencoe's father died, TIAA contacted Glencoe regarding the annuities purchased by her father. She received a number of documents from TIAA that explained her rights with respect to the annuities and policies. One of the documents received was a "silver booklet" that contained the following language:

**Benefit Payment Information**

Current federal tax law establishes required minimum distribution dates for survivor benefits from 403(b) annuity contracts when the annuity owner dies before beginning annuity income. In

general, for non-spouse beneficiaries, your benefits must be totally distributed by December 31 of the fifth year following the annuity owner's death. This requirement does not have to be met if you begin receiving periodic payments—under an income method that doesn't guarantee payments beyond your life expectancy—by December 31 of the year following the year in which the original annuity owner died.

(Mem. in Supp. of Def.'s Mot. for Summ.J., Ex. 1, Dep.Ex. 8.) The booklet also contained the following disclaimer:

The tax information is based on our current understanding of the law. We cannot give tax advice for individual situations or guarantee final tax results. For more detailed tax information and advice, please consult your personal tax advisor.

(*Id.*)

Glencoe alleges that she contacted TIAA regarding the minimum distribution requirements mentioned in the "Benefits Payment Information" section of the booklet. Glencoe claims TIAA informed her that she had the following three options only: (1) withdraw the funds in one lump sum, (2) purchase an annuity that would not guarantee payment after her death, or (3) withdraw the funds over a five-year period. TIAA disputes that this advice was given. Nevertheless, construing the facts in a light most favorable to Glencoe, as the Court must, the Court accepts as true Glencoe's allegations for the purpose of this motion.

Glencoe contacted TIAA several times in an attempt to more clearly understand her rights under the insurance policies and annuities. Glencoe also enlisted the assistance of her mother, Sharon Steorts, who is a licensed attorney. Steorts contacted TIAA on Glencoe's behalf in order to ascertain what distribution options were available to Glencoe. Through their communications with TIAA, both Glencoe and her mother determined that Glencoe could not leave the money in the deceased's accounts, and therefore Glencoe had to exercise one of the three distribution options listed above.

Glencoe contacted a Certified Public Accountant ("CPA") in order to assess the tax consequences of the various distribution options. The CPA informed Glencoe she would incur the greatest tax liability if she received a lump sum payment. Based on Glencoe's reluctance to purchase an annuity that would not guarantee payment after her death, the CPA recommended she withdraw the funds over a five-year period.

Glencoe also further consulted with her mother and a financial investment advisor about her investment options. After consulting these various sources, Glencoe eventually elected to withdraw the total amount of the annuities over a five-year period. Glencoe withdrew approximately twenty percent of the funds each year in an effort to minimize the tax consequences of these withdrawals. Glencoe received payments of $33,300 in 1992, $41,246 in 1993; $38,644 in 1994, and $36,901 in 1995. In 1992, shortly after Glencoe received her first distribution, she quit her job and began caring for her ailing grandmother. During this time, Glencoe invested a portion of the withdrawn money and used the remainder for her own living expenses. She remained unemployed until she began working part-time for her mother in 1995. Currently, she is employed full-time with the United States Department of Labor.

After receiving her fourth distribution, Glencoe somehow concluded she could have kept the funds in the accounts without penalty so long as she withdrew only small amounts each year. She has since instituted this action, claiming that she was denied benefits under the annuities and insurance policies and, in the alternative, that TIAA breached its fiduciary duty by providing inaccurate information regarding her investment options. The parties both moved to consolidate this case with another identical case, and by an Order dated March 2, 1999, this case, civil action number 2:99–0015, was consolidated

with civil action number 2:99–0115. Defendant now moves for summary judgment.

## III. DISCUSSION

Plaintiff pursues two alternate theories of this case. First, she asserts a claim for damages incurred because TIAA allegedly provided her with inaccurate information. In the alternative, she asserts a claim on behalf of the retirement accounts for damages the *accounts* suffered because of Defendant's alleged breach of fiduciary duty. The Court addresses the claims in reverse order.

Although the complaint appears to assert claims only on behalf of Plaintiff Glencoe, Plaintiff now argues at the summary judgment stage she is also bringing a claim on behalf of the annuities and insurance policy plans. Plaintiff characterizes these claims as derivative suits brought by herself, as a beneficiary, on behalf of the plans. *See* 29 U.S.C. § 1132(a)(3). She argues that Defendant breached its fiduciary duty to the plans by improperly distributing the funds to Plaintiff. Plaintiff seeks complete restoration of the distributed funds to the accounts as a remedy for Defendant's alleged breach.

■ The parties agree that the Employee Retirement and Income Security Act ("ERISA") governs this dispute. ERISA provides a private cause of action for beneficiaries when a fiduciary has breached its duty to the plan. *See* 29 U.S.C. § 1132(a)(3). A fiduciary is liable to the plan for any loss to a plan as a result of a breach of fiduciary duty. *See* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach.") Here, however, Defendant has breached no duty to the plan.[1] The only arguable loss suffered by the plan resulted from TIAA distributing payments to Glencoe at her studied

and informed request. Certainly this distribution can not breach a fiduciary duty. The Court concludes Defendant has not breached any duty to the plan by distributing benefits to Plaintiff pursuant to her request.

Plaintiff also asserts a claim for damages she suffered individually due to the misinformation she allegedly received from Defendant. Plaintiff argues she is entitled to (1) complete restoration of the benefits already distributed to her and/or (2) money damages for the tax liability she incurred and the loss of any tax-deferred growth income that resulted from her withdrawal of the benefits in years 1992–1995.

■ As for full restoration of benefits, clearly Plaintiff is not entitled to such extraordinary relief. ERISA provides that a beneficiary may sue "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," or "to obtain other equitable relief." 29 U.S.C. § 1132(a)(1)(B) & (a)(3). Full restoration of benefits does not fall under any of these categories. First, Plaintiff is not entitled to recapture funds that have already been distributed and volitionally used by her for her own benefit. Such a windfall surely is not a benefit due her under the plan nor is it a right she has acquired under the plan. Second, full restoration of her benefits would not be equitable so as to fall under the "equitable relief" provision of § 1132(a)(3). On the contrary, equity, *i.e.*, fairness, would prohibit the Court from permitting Plaintiff to receive such a windfall.

■ As for Plaintiff's claim for consequential damages—*i.e.*, the tax liability she incurred and the loss of tax-deferred growth income that resulted when she withdrew the funds from the annuities and insurance accounts—as a matter of law these amounts are not recoverable ele-

---

1. The Court assumes, without deciding, that Defendant is a fiduciary under ERISA.

ments. Extracontractual damages are not recoverable under ERISA. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("[W]e do not find in [§ 1109] express authority for an award of extracontractual damages to a beneficiary."); *accord Reinking v. Philadelphia Am. Life Ins. Co.,* 910 F.2d 1210, 1220 (4th Cir.1990) (overruled on other grounds by *Quesinberry v. Life Ins. Co. of North Am.,* 987 F.2d 1017 (4th Cir.1993)). Plaintiff does not dispute this point seriously, but rather argues that her damages are not extracontractual. However, to be recoverable under ERISA, Plaintiff's tax liability and loss of tax-deferred growth income must be either (1) a benefit due under the plan, or (2) compensable as other equitable relief. *See* 29 U.S.C. § 1132(a). The relief Plaintiff seeks does not fall under either category.

First, avoiding tax liability and obtaining the benefit of tax-deferred growth income is not a specific benefit due under the plan. *See Fraser v. Lintas: Campbell–Ewald,* 56 F.3d 722, 726 (6th Cir.1995) ("[T]ax advantages forfeited because of the failure by a fiduciary to provide notice of a rollover option do not constitute a recoverable 'benefit due' under ... ERISA."); *Novak v. Andersen Corp.,* 962 F.2d 757, 759 (8th Cir.1992) ("The Plan here does not provide, and [the beneficiary] does not argue, that compensation for tax losses caused by the Plan administrator's failure to give a roll-over notice is [a benefit under the Plan].").

Second, damages for tax liability or loss of tax-deferred income cannot be characterized as other equitable relief. The tax implications of Plaintiff's withdrawals can be measured only in dollar figures. Money damages are traditionally legal, rather than equitable in nature. *See, e.g., Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("Money damages are, of course, the classic form of legal relief."). Because

§ 1132(a)(3) only provides for equitable relief, compensatory damages are not available under this provision.

Plaintiff argues the relief she seeks is more accurately characterized as restitution. The Court finds the following quote from *Mertens* particularly appropriate to this case:

Petitioners maintain that the object of their suit is "appropriate equitable relief" under [§ 1132(a)(3) ]. They do not, however, seek a remedy traditionally viewed as "equitable," such as injunction or restitution.... Although they often dance around the word, what petitioners in fact seek is nothing more than compensatory damages—monetary relief for losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief.... And though we have never interpreted the precise phrase "other equitable relief," we have construed similar language of [other federal statutes] ... to preclude "awards" for compensatory or punitive damages.

*Id.* Just like the petitioners in *Mertens,* Plaintiff seeks nothing more than compensatory damages calculated on the tax consequences of her withdrawal of funds from the retirement accounts.[2] These compensatory damages are simply not recoverable under § 1132(a)(3). *See, e.g., id.; Farr v. U.S. West Communications, Inc.,* 151 F.3d 908, 916 (9th Cir.1998) ("[M]onetary relief in the form of compensatory damages is also unavailable under [§ 1132(a)(3) ] to remedy a fiduciary's breach."); *Novak,* 962 F.2d at 760 ("We find nothing in the statutory language to persuade us to interpret 'other appropriate equitable relief' to mean anything other than what it usually means—declaratory or injunctive relief."); *Cunningham v. Dun & Bradstreet Plan Servs., Inc.,* 889 F.Supp. 932, 935 (N.D.Miss.1995) (" '[E]quitable relief' as contemplated under § 1132(a)(3) [is] limited to those remedies that [are] typically

---

**2.** To the extent that Plaintiff requests true restitution—full restoration of benefits—this

Court has determined that such relief would not be equitable.

available in equity—e.g., injunction, mandamus, and restitution, but not compensatory damages."). Thus, Plaintiff's claim for consequential damages also fails. Because Plaintiff is not entitled to any relief under ERISA, Defendant is entitled to judgment as a matter of law.

## IV. CONCLUSION

There being no genuine issue of material fact, Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is **GRANTED.** Judgment will be **ENTERED** for Defendant, and this case will be **STRICKEN** from the docket.

The Clerk is directed to send a copy of this Order to counsel of record and any unrepresented parties.