Kenneth SEALES, et al., Plaintiffs,

v.

The AMOCO CORPORATION, et al., Defendants.

No. Civ.A. 97–C–1197–N.

United States District Court, M.D. Alabama, Southern Division.

Jan. 28, 2000.

**1314**

George C. Longshore, Birmingham, AL, for plaintiffs.

David J. Middlebrooks, Lehr, Middlebrooks, Price & Proctor, P.C., Birmingham, AL, Wilber H. Boies, Michael Glackin, Judith A. Kelley, McDermott, Will & Emery, Chicago, IL, for defendants.

## MEMORANDUM OPINION

CARROLL, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs, Kenneth Seales, Maxine Mills, Robert Hilson and Robby Harrelson, former employees of Amoco Fabrics and Fibers Company, proceed by class action alleging that defendants have violated the terms of the Amoco Fabrics Cash Balance Retirement Plan, formerly the Employee Retirement Plan of Amoco Fabrics, and the summary Plan description, the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), the defendants' fiduciary duty to the plaintiffs and Amoco Fabric's contract with the plaintiffs.

This matter is before the court on the plaintiffs' motion for partial summary judgment. The defendants have responded with a cross motion for summary judgment. For the reasons which follow, the court finds that plaintiffs' motion for partial summary judgment is due to be denied and that the defendants' motion for summary judgment is due to be granted.

## II. FACTS

Amoco Fabrics acquired the Employee Retirement Plan of Amoco Fabrics Company ("ERP") on June 1, 1970 for the benefit of its employees and participating affiliates. Amoco Fabrics made all contributions to the Plan which qualified as an employee pension benefit Plan under ERISA. All of the plaintiffs, former employees of Amoco Fabrics, were participants in the Plan. In September 1992, Amoco Fabrics was sold and the plaintiffs were terminated. The version of the Plan in effect during the plaintiffs' tenure and at the time they separated from employment was the (ERP) Plan [1]. The plaintiffs' participation in the Plan ended upon their termination. At the time of their termination, the plaintiffs' interests in the Plan were vested because they had at least five years either of employment with Amoco Fabric or by virtue of the sale.

Following the sale of Amoco Fabrics, the Plan Administrator made cash distributions to some of the Plan participants, including the plaintiffs, which underestimated the present value of the participant's accrued benefits. According to the Plan, no cash distributions were permitted

---

1. The Plan was restated effective April 1, 1993 (the 1993 Restatement) and again January 1, 1994. Prior to the 1994 Restatement, the Plan was a conventional defined benefit pension plan, providing for the payment of annuity benefits at normal retirement age.

to be made to participants if the present value of accrued benefits exceeded $3,500.[2] If the present value of accrued benefits was less than $3,500, the ERP Plan permitted a single lump sum distribution of benefits without the employee's consent. Because the present values of the plaintiffs' benefits were underestimated, the plaintiffs erroneously received lump sum cash distributions of their pension benefits. Each of the plaintiffs received a cash distribution of less than $3,500, because of the error, even though they were not eligible to receive any cash distributions. The plaintiffs were not offered the option of retaining their pension annuity. If the present value of plaintiffs' accrued benefits had not been underestimated, their pension benefits would not have been cashed out because the value of those benefits, properly calculated, exceeded $3,500. But for the improper calculations, the plaintiffs would have been entitled to receive a full annuity at retirement age. Amoco concedes that it made an error in calculating the plaintiffs' benefits and that the error occurred because Amoco used an incorrect interest rate factor. Amoco contends that the error was discovered after some routine review of Plan operations in 1995. After it discovered the error, Amoco voluntarily reevaluated the benefits of the affected participants.

Amoco then submitted a Voluntary Resolution (VCR) filing to the Internal Revenue Service detailing its Plan to redress the erroneous cash distributions. The Internal Revenue Service accepted the Amoco proposal for corrective measures which consisted of three alternatives. First, participants who received a cash distribution could choose to receive an annuity at retirement age in the amount to which they would have been entitled prior to the cash distribution if they repaid the entire cash distribution to the Plan, and interest. Second, if the participant chose not to repay the cash distribution with interest to the Plan, the participant could choose to receive an additional annuity under the Plan, based on the participant's accrued benefit at termination, less the amount of the benefit received from the cash distribution. Third, a participant could choose to retain the cash distribution and receive the value of the additional annuity in the form of a second cash distribution from the Plan.

In a February 1997 letter, Amoco offered each of the plaintiffs the opportunity to select one of the three alternatives. The letter did not inform the affected participants that the 1992 cash distribution was erroneous, that the present value of their accrued benefits had been improperly calculated or that they were not entitled, under the version of the ERP Plan which existed in 1992, to receive the 1992 cash distribution in lieu of their retirement annuities. Rather, the letter falsely informed the affected participants that at the time of their termination, they had been paid a sum "equaling the total value" of their Plan benefits. Each plaintiff chose the third option and kept the cash distribution received in 1992 and accepted a second cash distribution from the Plan. The plaintiffs' acceptance of a second lump sum distribution ended the Plan's obligation to the plaintiffs.

Amoco Corporation, acting through its board of directors, was designated as Plan administrator. The Plan provides for a delegation of authority and a series of Amoco executives have acted as Plan administrator. At the time that plaintiffs' claim for reinstatement of their annuity,

---

**2.** In pertinent part, the ERP Plan provided:
 7.03 *Monthly Payment of Annuity Income—Exception for Small Annuities*
 (b) If the present value of the entire nonforfeitable benefit derived from employer contributions on behalf of the employee-participant does not exceed $3,500; (i) at the time such participant separates from the service of any employer or any other company affiliated directly or indirectly with the company or at any time thereafter before the annuity starting date ... then the Plan Administrator will pay the single-sum cash equivalent of the annuity income payable to such participant ...

the Senior Vice President of Human Resources had delegated certain administrative responsibilities under the Plan to the Manager of Benefits Plans of Amoco Corporation. Plaintiffs subsequently made claims for additional benefits under the Plan by demanding that Amoco reinstate their retirement annuity benefits. Pursuant to the Plan's two level claims procedure, Amoco denied the plaintiffs' claim for benefits in addition to the 1992 and 1997 cash distributions and refused to reinstate the plaintiffs' retirement annuities.

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to his claims, and on which he bears the burden of proof at trial. *Id.* To satisfy this burden, the nonmovant cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e).

The court's function in deciding a motion for summary judgment is to determine whether there exists genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.,* 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.,* 887 F.2d 1499 (11th Cir.1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990).

When the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All the evidence and the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

In the instant case, both parties have filed motions for summary judgment. On cross-motions for summary judgment, the mere filing of cross motions for summary judgment does not warrant the entry of such judgment, however, unless there is no genuine issue as to any material fact. *Volunteer State Life Insurance Co. v. Henson,* 234 F.2d 535 (5th Cir.1956).[3]

### B. STANDARD OF REVIEW

The defendants argue that an arbitrary and capricious standard should be applied to determine whether Amoco's corrective measures with respect to the 1992 benefit

---

**3.** *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (the decisions of the former 5th Circuit are binding as precedent on all federal courts within the 11th Circuit).

calculation error were reasonable because the Plan Administrator had the discretion to make benefits determinations and to take corrective actions under the ERP Plan and 1993 and 1994 Restatements. In opposition, the plaintiffs argue that a de novo standard is applicable because the Plan Administrator did not have the requisite amount of discretion under the ERP Plan. The plaintiffs argue alternatively, that a heightened arbitrary and capricious standard is applicable because the plaintiffs contend that Amoco, as Plan Administrator and employer, has an inherent conflict of interest.

■ ERISA does not set forth a standard of review for an administrator's decision. Pursuant to the array of applicable standards of review suggested by the Supreme Court in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the 11th Circuit has articulated three standards for reviewing a plan administrator's decisions. A de novo review is appropriate if the administrator does not have a grant of discretion from the plan. An arbitrary and capricious standard is applicable if the plan does grant the administrator discretion. However, less deference may be afforded to the administrator's decisions and a heightened arbitrary and capricious standard applies if the administrator has a conflict of interest. *Marecek v. BellSouth Telecommunications, Inc.*, 49 F.3d 702, 705 (11th Cir. 1995).

■ In the instant case, the defendants have presented evidence which indicates that the Plan Administrator had a broad range of discretion under the ERP Plan and subsequent amendments to make eligibility determinations and to interpret plan language. For example, the ERP plan grants the Plan Administrator the following authority:

(d) to construe and interpret the Plan, decide questions of eligibility and determine the amount, manner and time of payment of any benefits in accordance with provisions of the Plan, but subject to the authority of the named fiduciary for review of denied claims;

(e) to prescribe rules, regulations and procedures to govern administration of the Plan and to be followed by participants and beneficiaries filing claims for benefits; and

(f) to prepare and provide required reports and disclosures to Plan participants, surviving joint annuitants and beneficiaries and such other information explaining the Plan as shall be necessary for the proper administration of the Plan.

Both the 1993 and 1994 Restatements also reserved to the Plan Administrator the power to determine eligibility for benefits:

7.01 Eligibility for Benefits. The Administrator will determine a Participant's Severance from Service and his eligibility for benefits ... (1993 Restatement).

The 1994 Restatement contained the same or similar language with respect to eligibility determinations and required that the Plan Administrator promptly act on claims for benefits under the Plan. The plaintiffs contend that because the Plan does not use the word discretion, the Plan Administrator did not have the requisite discretion and therefore, the de novo standard should apply.

■ The absence of specific language which grants discretionary authority is not determinative. *See Alcorn v. The Sterling Chemicals Inc. Medical Benefits Plan*, 991 F.Supp. 609 (S.D.Tex.1998) (word "discretionary" need not be used in ERISA plan to warrant use of abuse of discretion standard). Rather, for the arbitrary and capricious standard to obtain, the plan must only grant the administrator "discretionary authority to determine eligibility for benefits [and] to construe the [plan's] terms." *Firestone*, 489 U.S. at 102, 109 S.Ct. 948. The language granting discretionary authority to the administrator must be "express language unambiguous in its design." *Kirwan v. Marriott Corp.*,

10 F.3d 784, 789 (11th Cir.1994); *see also, Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 38–39 (11th Cir. 1989) (arbitrary and capricious standard used where an administrator had "full and exclusive authority to determine all questions of coverage and eligibility" and "power to construe the provisions"). The court concludes that the language contained in the ERP Plan and subsequent amendments, considered in their entirety, was specific enough to impliedly confer discretionary authority on the Administrator. *See Vann v. National Rural Electric Coop. Association Retirement and Security Program,* 978 F.Supp. 1025, 1038 (M.D.Ala. 1997) ("In the Eleventh Circuit, courts look to all of the plan documents to determine whether the plan affords . . . enough discretion to make arbitrariness standard applicable.") (internal quotations omitted). Therefore, the court finds that the arbitrary and capricious standard is applicable.

■ As noted previously, the plaintiffs argue that if an arbitrary and capricious standard is utilized, it should be a heightened one. The heightened arbitrary and capricious standard is appropriate only where the plan beneficiary adduces evidence that the Plan Administrator has a "substantial" conflict of interest. *Brown v. Blue Cross & Blue Shield of Alabama Inc.,* 898 F.2d 1556, 1566 (11th Cir.1990). Where the claimant has made no showing that the plan administrator has a substantial conflict of interest, the court may set aside the administrator's decision only if is an abuse of discretion.[4] *Id.* at 1554. Here, plaintiffs advance only conclusory allegations that the defendants have an inherent conflict of interest because Amoco, through its employees, was the Plan Administrator. *See Kimber v. Thiokol Corp.,* 196 F.3d 1092 (10th Cir.1999) (fact that administrator of employer's ERISA plan was employer's employee was not

enough per se to demonstrate conflict of interest). The plaintiffs have not presented any probative evidence which suggests that the administrator's decision was influenced by any conflict of interest. Since the plaintiffs have adduced no probative evidence that the defendants' decisions were motivated by a substantial conflict of interest, the court assumes that the Plan Administrator acted neutrally. *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan,* 144 F.3d 1014, 1020 (7th Cir.), *cert. denied,* —— U.S. ——, 119 S.Ct. 372, 142 L.Ed.2d 307 (1998).

Additionally, the structure of the Plan does not lend itself to the suggestion that the Administrator was motivated by conflicting interests. The Plan was in the form of a pension trust funded by Amoco and the corpus of the trust existed separately from Amoco assets.[5] While adverse benefit determinations to the plaintiffs and other participants affected by the 1992 error may have saved considerable sums, the money would have conferred savings to the trust and did not directly benefit Amoco. *Id.* at 1567–68; *see, e.g., de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1191 (4th Cir.1989). Accordingly, the court finds that a heightened arbitrary and capricious standard is not appropriate in the instant case.

## C. ERISA CLAIMS

The court has concluded that the central issues are as follows: (1) whether the 1992 cash distribution was reasonable, (2) whether the defendants' 1997 remedy to the 1992 improper calculation of the plaintiffs' accrued benefits was reasonable under the arbitrary and capricious standard, and (3) whether the methods by which Amoco effected its corrective measures breached its fiduciary duty to the plaintiffs and if so, (4) whether there is an appropriate remedy under ERISA or other law.

---

4. The 11th Circuit has equated the arbitrary and capricious standard and abuse of discretion in post-*Firestone* cases. *See, e.g., Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir.1989).

5. See Defendant's Exhibit A, ERP Section 14.10; Defendant's Exhibit B, p. 1–2.

(5) Lastly, the court must consider whether plaintiffs are entitled to proceed on their claim for benefits. Of necessity, the analyses of these issues are interrelated.

### a. The 1997 Corrective Measures

The court first considers whether the defendants' corrective approach was reasonable plan administration under the arbitrary and capricious standard. Under the arbitrary and capricious standard of review, the court "is limited to deciding whether the interpretation of the plan was made rationally and in good faith, not if it was correct." *Vann*, 978 F.Supp. at 1038 (citing *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir.1997)). The defendants argue that the 1997 corrective measures were reasonable because the ERP and subsequent amendments permitted the Plan Administrator to rectify mistaken distributions. The defendants further contend that the three alternatives contained in the corrective approach offered all of the affected participants, including the plaintiffs, the full value of their benefits. In response, the plaintiffs argue that the corrective measures were not reasonable because the defendants improperly relied upon the 1994 Restatement or Cash Balance Plan as the textual basis for the administrator's corrective measures. The plaintiffs also assert that the Plan language upon which defendants relied to effect the corrective measures does not apply to the cash distribution of annuity rights.

The plaintiffs argue strenuously that a construction of the ERP Plan should be paramount in the court's analysis since it is the Plan in which the majority of the plaintiffs participated. Plaintiffs further argue that the defendants unreasonably relied upon the Cash Balance Plan in effecting the corrective proposals both to the IRS and to the plaintiffs. According to the evidence that defendants have adduced, however, the ERP and the Cash Balance Plan represent different versions of the same plan. The court finds that this position is more tenable since at no time did Amoco undertake formal measures as required by ERISA to terminate the ERP Plan. Rather, the ERP Plan has twice been amended.[6] Further, the relevant portions of the 1994 Restatement which the Administrator used to effect the corrective measures do not differ materially from the earlier ERP provisions. The 1994 Restatement authorized lump sum cash distributions. Therefore, the plaintiffs' argument on this point is without merit.

In the instant case, the Administrator's decision to undertake corrective measures for the erroneous 1992 cash distributions required an interpretation of Plan language. As noted previously, the Plan conferred discretionary authority on the Administrator to construe the terms and language of the Plan. Therefore, the court must decide, as a threshold issue, whether the defendants' interpretation of the Plan was reasonable under the arbitrary and capricious standard. The court may find that "application of plan provisions is arbitrary and capricious if it is clearly in conflict with the [P]lan's plain language." *Pilon v. Retirement Plan for Salaried Employees of Great Northern Nekoosa Corporation*, 861 F.2d 217, 219 (9th Cir.1988) (reversed on other grounds) (citing *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302, 1307 (9th Cir.1986)). However, if the Administrator's interpretation of the Plan's language is reasonable, the court's review terminates because no abuse of discretion has occurred. *See Spacek v. The Maritime Association*, 134 F.3d 283, 292 (5th Cir.1998)

Defendants contend that Section 9.06 of the 1994 Restatement authorized the Ad-

---

**6.** Section 10.01 of the Plan documents reserves to Amoco the power to amend the plan at any time.

ministrator to correct mistakes [7] which involve participants not receiving the proper amounts of payments as follows:

> 9.06 *Effect of a Mistake.* In the event of a mistake or misstatement as to the eligibility, participation or service of any Member, or the amount of payments made or to be made to a Member or Beneficiary, the Plan Administrator shall, if possible, cause to be withheld or accelerated or other make adjustment of such amounts of payments as will in its sole judgment result in the Member or Beneficiary receiving the proper amounts of payments under this Plan.

The defendants interpreted the foregoing provisions to require the Administrator to remedy the erroneous 1992 cash payout. Primarily, the plaintiffs' argument is that Section 9.06 is not applicable to the 1992 mistaken cash distribution because there was no mistake as to the "amount of payment." Clearly, the plaintiffs' contentions on this point are highly unsound. Neither party disputes that in 1992, the plaintiffs mistakenly received lump sum cash distributions of single life annuity benefits. Neither party disputes that the mistake occurred as a result of understated present values of accrued benefits so that each of the plaintiffs received inappropriate distributions of annuity benefits. Logically, therefore, those distributions represented a mistake in the amount of payment if the plaintiffs were actually entitled to receive no distributions at that time. If no mistaken payment had occurred, no remedial measures would have been necessary. Further, the unambiguous language of the

Plan states that the Administrator, in the event of a mistake, shall make appropriate adjustments as will result in the affected participants receiving the "proper amount of payments." Therefore, the court finds that it was reasonable for the Plan Administrator to set up remedial measures to repair the 1992 cash distributions and that such action was authorized by Section 9.06 of the 1994 Restatement.

The application of Section 9.06 resulted in a corrective proposal with three alternatives offered to each affected participant. An affected participant could choose to receive an additional cash distribution in the form of a second lump sum cash distribution, with interest. That amount represented the difference between what was paid in 1992 and the present accrued value of the pension benefit properly calculated. A second option permitted the participant to choose to receive a single life annuity at retirement age, equal to the difference between what had been paid in 1992 and the present accrued value of the pension benefit, properly calculated. The second option did not require any repayment of the 1992 cash distribution. In addition, participants had the option of repaying the lump sum already received, and interest, in return for reinstatement of the full single life annuity at retirement age.

As noted previously, each of the plaintiffs chose to receive a second lump sum payment, after receiving a letter which clearly set forth each of the alternatives. Moreover, the defendants have presented persuasive evidence that the difference between receiving the reduced single life annuity and the repayment option resulted in a relatively nominal loss of benefits to the plaintiffs.[8] Additionally, the corrective

---

**7.** Section 14.04(a) of the ERP provided that "in no case shall the employer, the Plan Administrator, or the Trustee, individually or combined, be liable to pay any greater annuity income or other benefit with respect to any participant, beneficiary or joint annuitant

than that which would be payable on the basis of the true facts."

**8.** For example, Plaintiff Robby Harellson, had he elected to receive the reduced single life annuity, would have received monthly payments of $252.21 at retirement age. If he had

measures did not have any prohibited effect on the vested benefits guaranteed to the participants under the Plan—the corrective measures offered reinstatement into the pension plan as an option and the plaintiffs rejected it. Therefore, the court finds that the three alternatives offered were consistent with the Plan's unambiguous mandate for the Administrator to "make adjustment[s]" that would result in the participants receiving the "proper [9] amounts" under the Plan. The alternatives provided the participants an opportunity to receive the proper amount of the benefits to which they were entitled, in cash or annuity form.

Furthermore, the plain language of the Plan did not permit the Administrator to confer a windfall on the plaintiffs by allowing them to both keep the 1992 cash distribution and to be reinstated in the plan without having the 1992 charged against their accrued benefits. Section 14.04 of the ERP contained the following provision:

b. *Effect on Annuity Income.* Overpayments from the Plan shall be charged against, and underpayments shall be added to, any annuity income accruing or due under the Plan to such participant, his beneficiary or joint annuitant.

elected the repayment option, he would have received a full single life annuity at retirement age of $253.29. Plaintiff Robert Hilson would have received $132.83 under the repayment option and $77.06 if he elected to received the reduced annuity. Maxine Mills would have received a full annuity in the amount of $195.19 and a reduced annuity of $171.28. Kenneth Seales would have received a full annuity of $250.55 and a reduced annuity of $252.41. Defendant's Exhibit I.

9. According to *Black's Law Dictionary*, (5th Ed.1979), the word "proper" means that which is "reasonably sufficient."

10. Because the court has concluded that the corrective measures were appropriate on other grounds, the court does not reach the question of whether defendants have a resti-

The court further notes that the goal of ERISA is to protect employer contributions set aside under the plan for employee participants. *See Metropolitan Life Insurance Co. v. Solomon*, 996 F.Supp. 1473, 1477 (M.D.Fla.1998) (*citing Luby v. Teamsters, Health, Welfare and Pension Trust Funds*, 944 F.2d 1176, 1186–87 (3d Cir.1991)). Recovery of mistakenly paid benefits is reasonable, therefore, where it furthers ERISA's goals and prevents conferring undue benefits to some plan participants. An application of the Plan's language in the instant case resulted in corrective measures which are consistent with the goal ERISA goals and the Plan.[10] Accordingly, because the corrective measures were a reasonable interpretation of Plan language, the court concludes that they were not arbitrary and capricious.

### b. Breach of Fiduciary Duty[11]

The plaintiffs contend that the defendants have breached their fiduciary duty by failing to disclose that the 1992 cash distributions were mistaken and that the cash distributions were for lesser amounts not due to be paid out of their single life annuity benefits. Therefore, the plaintiffs assert that the defendants should restore the plaintiffs' pension eligibility pursuant

tutionary remedy under ERISA to recover the mistakenly paid benefits.

11. For summary judgment purposes, the court assumes that the Plan Administrator and Amoco acted in developing and implementing the corrective measures as fiduciaries in that they exercised discretionary authority in determining the eligibility for benefits and otherwise managing the Plan. "[A] person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting administration of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

to 29 U.S.C. § 1109.[12] The defendants argue in response that a recovery for breach of fiduciary duty is untenable where, as here, the plaintiffs seek an individual recovery. Rather, the defendants contend that pursuant to the Supreme Court's decision in *Massachusetts Mutual Life Insurance v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), recovery for breach of fiduciary duty may only occur when relief is sought for the Plan. However, before the court may properly reach the issue of whether ERISA permits a recovery for breach of fiduciary duty, it must first determine whether defendants' conduct constitutes a breach of fiduciary duty.

■ In the letter which communicated the corrective measures to the plaintiffs, Amoco failed to disclose that the 1992 cash distributions were a mistake. Rather, the letter suggested that an unexpected benefit was being conferred on the plaintiffs. Specifically, the letter stated, in pertinent part:

> As part of its regular process, Amoco has reviewed your benefit calculation, including the interest rate used in calculating the value of your benefit, and we are pleased to inform you that you are eligible for a final additional benefit ... from the plan.

The letter also failed to mention that the plaintiffs incorrectly received cash distributions instead of single life annuity benefits. As the court noted previously, all of the plaintiffs chose to receive an additional cash benefit as opposed to the options that would have reinstated their participation in the pension plan.

Under ERISA, a fiduciary is required to "discharge his duties with respect to the

plan solely in the interest of the participants and beneficiaries." ERISA § 404(a), 29 U.S.C. § 1104(a). Further, ERISA requires a plan administrator to discharge his fiduciary duties as follows:

> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and ...
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such manners would use in the conduct of an enterprise of a like character and with like aims ... 29 U.S.C. § 1104(a)(i)(1)(A)–(B) (1988).

The plaintiffs argue that by failing to disclose the 1992 mistake, the defendants failed to act with the care and diligence that a reasonable person would have used and, therefore, ought to reinstate their eligibility to the pension plan.

The Supreme Court did not decide in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), whether ERISA imposes a duty on fiduciaries to voluntarily disclose information, or in response to plan participant inquiry. 516 U.S. at 506, 116 S.Ct. 1065. Nonetheless, courts have held that a "fiduciary has an obligation to convey complete and accurate information material to the [plan participant's] circumstance, even when the [plan participant] has not asked for the information." *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir.1995). The fiduciary also has an attendant duty of loyalty which requires that he not only avoid misstatements but also "an affirmative duty to inform ... when ... silence might be harmful." *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1016 (3d.

---

12. Specifically, § 1109 provides: "[A]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed by fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary, and shall be subject to such other equitable remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a).

Cir.1997); *see also, Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988) (plan fiduciaries have a "duty not to make misrepresentations either negligently or intentionally, to ... plan participants.") When the defendant's failed to disclose to the plaintiffs that the present value of their pension benefits had been incorrectly computed and when they failed to reveal that the 1992 cash distributions occurred as the result of a mistake, they misled the plaintiffs in violation of their fiduciary duties. Further, when the defendants falsely stated in the letter which described the three corrective measures that plaintiffs had "received the total value" of their plan benefits, they made an affirmative misstatement which also constitutes a breach of fiduciary duty.

### c. Propriety of Remedies Sought

 Having concluded that the defendants breached their fiduciary duty, the issue for the court thus becomes whether the plaintiffs have a remedy under ERISA. Proceeding under 29 U.S.C. § 1109, the plaintiffs allege that an individual recovery is due for the defendants' breach of fiduciary duty. Given the nature of the claim, the court assumes that the plaintiffs have identified § 502(a)(2) as the controlling authority for the breach of fiduciary claim. The defendants argue, however, that the plaintiffs do not have a remedy for breach of fiduciary duty because *Massachusetts Life Ins. Co v. Russell*, does not permit an individual recovery. In *Russell*, the Supreme Court held that plaintiffs proceeding under ERISA § 502(a)(2), do not have a recovery from a fiduciary for violation of ERISA provision § 1109(a), which establishes liability for breach of fiduciary duty, because § 1109(a) provides a remedy to the entire plan for breach, rather than an

individual recovery. *Russell*, 473 U.S at 147, 105 S.Ct. 3085. In relevant part, § 502(a)(2) provides that a "participant, beneficiary or fiduciary" may bring "a civil action for appropriate relief under section 409 ... [§ 1109]." Although the court recognizes that a participant may bring an action for breach of fiduciary duty under 502(a)(2) for the benefit of the plan, in the instant case, *Russell* expressly abrogates the plaintiffs' effort to use the § 1109 breach of fiduciary duty provision as a means of recovering individual damages. Therefore, the plaintiffs' claim for damages pursuant to § 502(a)(3), based on a breach of fiduciary duty must fail.

However, that finding does not end the possibility of a recovery for plaintiffs because the Supreme Court in *Russell* did not reach whether individual extracontractual damages [13] are available under § 502(a)(3). *Id.* at 149, 105 S.Ct. 3085. ERISA § 502(a)(3) allows a plan beneficiary "to obtain other appropriate equitable relief (i) to redress [violations of ERISA or of the terms of an ERISA plan] or (ii) to enforce any provisions of this subchapter or the terms of the plan." Therefore, § 502(a)(3) permits "an individual plan participant to seek ... remedies in his individual capacity for a breach of fiduciary duty not specifically covered by other enforcement provisions of [§ 502]." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 942 (8th Cir.1999). Significantly, the plaintiffs allege in their summary judgment motion that they are also making a claim for benefits under § 502(a)(1)(B). Assuming that plaintiffs identify § 502(a)(3) as the statutory authority for the breach of fiduciary claim, the defendants assert that the holding of the Supreme Court in *Varity Corp v. Howe* fore-

---

**13.** Though the plaintiffs claim compensatory and punitive damages are due because of the defendant's breach of fiduciary duty, they do not set forth the ERISA provisions under which they are proceeding. Plaintiffs allege in their summary judgment brief that they are

seeking benefits pursuant to 29 U.S.C. § 502(a)(1)(B). Therefore, the court presumes that they are proceeding under § 502(a)(3) which provides a possible avenue of recovery for plaintiffs.

**1324**

stalls a claim for breach of fiduciary duty where plaintiffs have a claim for benefits under § 502(a)(1)(B). That subsection states in pertinent part: "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan ..." The court is persuaded that the defendants' position is the correct one.

 In *Varity*, employee participants in a pension plan were fraudulently induced to leave one pension plan and transfer to another plan which the employer knew was unsound. The Supreme Court concluded that ERISA authorized a lawsuit for individualized equitable relief for the breach of fiduciary duty because the plaintiffs in *Varity* had no other means of obtaining "adequate" relief. *Varity*, 516 U.S. at 515, 116 S.Ct. 1065. Accordingly, though § 502(a)(3) does provide for "appropriate relief," as the Supreme Court recognized in *Varity*, it does not provide unlimited relief. *Varity*, 516 U.S. at 512, 116 S.Ct. 1065. Only where ERISA does not provide adequate relief, can plan participants pursue individualized relief for a breach of fiduciary duty. *Id.* The Supreme Court has further clarified the definition of appropriate relief; it is limited to various forms of equitable relief including injunctive, restitutionary, or mandamus relief but does not extend to compensatory or "make whole" damages. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256–58, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

In light of the foregoing legal principles, the court must now determine whether the plaintiffs' claim for benefits under § 502(a)(1)(B) and for the breach of fiduciary duty may coexist. In making this determination, the court must examine the substance of the remedy sought rather than the label that the plaintiffs have given it. *Id.* at 255, 113 S.Ct. 2063. In the

instant case, the plaintiffs allege in the complaint that they are entitled to "a declaratory judgment, an accounting, equitable and injunctive relief, compensatory and punitive damages and an award of fees on account of violation of the defendants' fiduciary duty." (Plaintiffs' 3rd Amended Complaint, paragraph 1). Ostensibly, the plaintiffs contend that those constitute "appropriate equitable relief" under § 502(a)(1)(B). An award of compensatory damages such as the plaintiffs claim outright is impermissible.

Further, since the plaintiffs are seeking to have their participation in the Plan reinstated in full as if the 1992 payout and 1997 cash distributions had not occurred, they are seeking inappropriate equitable relief. Reinstatement, though a suitable remedy in some instances under *Varity*, is not appropriate here because the plaintiffs have recovered all that to which they are entitled under the Plan. Here, reinstatement would not be equitable so as to come under the "equitable relief" provision of § 502(a)(3) because, as previously noted, it would result in an unfair windfall to the plaintiffs. *See Glencoe v. Teachers Insurance and Annuity Assoc. of America*, 69 F.Supp.2d 849, 852 (S.D.W.Va.1999) (finding the plaintiff's claim for full restoration of benefits, already distributed and used by plaintiff for her own benefit, not appropriate "equitable relief" under § 502(a)(3) where restoration of benefits would have resulted in windfall to plaintiff).

In addition, the court concludes that equitable relief is not warranted for the § 502(a)(3) claim for breach of fiduciary duty because the plaintiffs have an adequate remedy in the 502(a)(1)(B) claim for benefits. Further, the court notes that the plaintiffs seek remedies for the breach of fiduciary duty claim which seems to be exactly the same as the remedies requested for the claim for benefits.[14] *See Katz v.*

**14.** The court notes that the complaint does

not contain separate counts. Alleged ERISA

*ALLTEL Corp.,* 985 F.Supp. 1157, 1158 (N.D.Ga.1997) (where a plaintiff sought "no substantively different" relief in § 502(a)(3) claim than in her § 502(a)(1)(B) claim, equitable relief was not appropriate); *see also Short v. American Cast Iron Pipe,* 961 F.Supp. 261 (N.D.Ala.1997) (participant's right to bring claim for benefits against an ERISA plan provided adequate remedy and precluded employee from bringing claim for breach of fiduciary duty, even though the employee voluntarily dismissed claim for benefits).

Thus, the weight of *Russell, Varity* and *Mertens* require that the court find that there is no remedy pursuant to ERISA for the defendants' breach of fiduciary duty, in spite of the fact that the finding leaves the plaintiffs without a remedy for the breach. Accordingly, for the foregoing reasons, the plaintiffs' breach of fiduciary duty claim is precluded under ERISA and the defendants are entitled to summary judgment on that issue.

### d. Recovery of § 502(a)(1)(B) Benefits

As noted previously, the plaintiffs have also brought a claim for benefits due under the plan pursuant to § 501(a)(1)(B). That subsection states that "[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan ..." The defendants argue that the plaintiffs either waived their pension benefits under the Plan or alternatively, that the plaintiffs should be precluded from "repudiating their choice of a lump sum in lieu of an annuity" because of the quasi-estoppel doctrine. The court's consideration of the waiver and quasi-estoppel doctrines are unnecessary, however. The plaintiffs do not deny that they received two lump sum cash distributions of their annuity benefits. Rather, they argue that the cash distributions received are not sufficient because they no longer have any entitlement to participate in the Plan. The recovery which the plaintiffs seek, therefore, is for extracontractual damages related to an alleged breach of the Plan. The court finds, however, that the plaintiffs have received all monies due to them under the Plan. Further, extracontractual damages are unavailable under § 502(a)(1)(B). *See Russell,* 473 U.S. at 134, 105 S.Ct. 3085 ("the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—[502(a)(1)(B) ]—says nothing about the recovery of extracontractual damages."). Therefore, the plaintiffs' claim for benefits under the Plan must fail.[15]

### B. BREACH OF CONTRACT

Finally, the plaintiffs claim that the matters about which they complain constitute a breach of contract. ERISA preemption provisions are very broad and they are designed to preclude causes of action predicated on state law. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Therefore, any common law claim related to employment benefit plans is preempted. *See Shea v. Esensten,* 107 F.3d 625, 627 (8th Cir.1997) ("the language of ERISA's preemption clause sweeps broadly, embracing common law causes of action if they have a connection with or reference to an ERISA plan."). Unfortunately, the common law cause of action for "violation of the contract of employment" which the

violations and remedies are clustered so that it is not entirely clear that the claim for benefits and the breach of fiduciary duty remedies are substantively different. The court assumes, for the purposes of this summary judgment motion that they are not.

**15.** Because the court finds that the plaintiffs' claim for benefits fails, it does not reach the issue of whether the plaintiffs would be entitled to a trial by jury on that claim.

plaintiffs assert is "related to" a pension benefit plan and, therefore, it is preempted. Furthermore, it is well settled that, extracontractual damages such as those the plaintiffs claim, are also precluded under ERISA. *McRae v. Seafarers' Welfare Plan*, 920 F.2d 819, 821 (11th Cir.1991). ERISA may preempt state law claims even where the plaintiff is left with no remedy. *See Cannon v. Group Health Serv.*, 77 F.3d 1270 (10th Cir.), cert. denied, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996). Accordingly, the defendants are entitled to summary judgment on the breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, the court determines that the defendants' motion for summary judgment filed on November 25, 1998 is due be GRANTED and that the plaintiffs' motion for summary judgment filed on October 28, 1998 is due be DENIED.