**TRIGON INSURANCE COMPANY**
Plaintiff,

v.

**COLUMBIA NAPLES CAPITAL, LLC, et al., Defendants.**

No. CIV.A. 3:02CV582.

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 17, 2002.

Anthony Francis Shelley, Miller & Chevalier, Washington, DC, John Bennett Nicholson, Trigon Blue Cross Blue Shield, Richmond, VA, Jeri K. Somers, Miller & Chevalier, Washington, DC, for Plaintiff.

David Denman Hopper, Cook, Heyward, Lonnes, Lee & Hopper, P.C., Glen Allen, VA, for Defendants.

## MEMORANDUM OPINION

HUDSON, District Judge.

This matter is before the Court on the Defendants' Motion to Dismiss all counts of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

granted and Plaintiff's Motion for Partial Summary Judgment as to Counts 1, II, III, and V under Federal Rule of Civil Procedure 56. The Plaintiff, Trigon Insurance Company ("Trigon"), was a third-party "Claims Administrator" for an employee benefit plan (the "Plan") that was terminated on December 31, 2001. Trigon provided these services pursuant to an Administrative Services Agreement ("ASA"). Defendants are Columbia Naples Capital, LLC ("CNC"), Columbia Naples Capital, LLC Welfare Benefit Plan Trust (the "Trust"), Columbia Naples Capital, LLC Welfare Benefit Plan (the "Plan"), and Robert R. Kaplan ("Kaplan"), a former managing director of CNC and a former trustee of the Trust.

Trigon is suing the Defendants to recover benefits costs and administrative service charges and/or other monetary relief in connection with services allegedly rendered and benefits allegedly paid by Trigon to beneficiaries of the Plan following its termination. Trigon is pursuing this relief under the Employee Retirement Income Security Act of 1974 ("ERISA") and federal common law (Counts I, II, III, and IV), as well as under Virginia state law (Counts V and VI). Although Trigon asks the Court to order CNC and the Trust to "fund" and "make good to the Plan" amounts sufficient to cover these costs and charges, Trigon concedes that these funds would be used by Trigon to pay and reimburse *itself*, and that the source of its authority to "reimburse" itself is the ASA. Thus, the issue before the Court is not whether *beneficiaries* may have had a cause of action for benefits under the Plan after its termination, but whether, in connection with services provided, *Trigon* has a cause of action (either under federal or

state law) against any of the Defendants to recover money allegedly past due under the ASA.

For the reasons set forth herein, the Court finds that Trigon does not have a cause of action to recover such costs from any of the Defendants under ERISA or federal common law, and accordingly has failed to state a claim upon which relief can be granted with respect to Counts I, II, III, and IV. The Court will therefore grant the Defendants' Motion to Dismiss these counts with prejudice. With respect to the remaining two state-law counts, Count V for breach of contract (under the ASA and a Letter Agreement) and Count VI for fraud and misrepresentation (in connection with execution of the ASA), both under Virginia law, the Court will decline to exercise supplemental jurisdiction over such claims and will dismiss these two counts without prejudice to refile in state court. The Court, therefore, need not reach a decision with respect to the remainder of the Defendants' Motion to Dismiss and the Plaintiff's Motion for Partial Summary Judgment.

## I. BACKGROUND

On December 29, 2000, CNC, as "Employer," and trustees Kaplan and Larry L. Chamberlin created a Trust by agreement ("Trust Agreement"). Compl. ¶ 9; Ex. C.[1] The purpose of the Trust was "to fund the welfare benefit plans (collectively, 'the Plans') established for the benefit of employees of the Employer and members of its 'controlled group of corporations' or 'trades or businesses under common control.'" *Id.* The Trust Agreement provided that CNC would be the "named fiduciary of the Plans." *Id.* In this action, Trigon

---

1. All exhibits referenced are those documents attached to the Complaint. Each is appropriately considered by the Court along with the facts set forth in the Complaint on a motion to dismiss. *See Arnlund v. Smith,* 210 F.Supp.2d 755 (E.D.Va.2002).

has named and defined the "Plan" to include all of these plans. *Id.* ¶ 10.

On January 3, 2001, Kaplan, as Trustee for the Plan Administrator (defined in the agreement as CNC) and Trigon executed a Letter of Agreement for Payment Terms ("Letter Agreement"). *Id.* Ex. E. On May 17, 2001, Trigon and Kaplan, again as Trustee for the Plan Administrator, executed the ASA; in this agreement, however, according to Trigon, Kaplan "in handwriting unilaterally added 'Welfare Benefit Plan Trust' after the pre-printed 'Columbian Naples Capital, LLC' on the signature page." *Id.* ¶ 26; Ex. D at 13. Although Trigon asserts that CNC executed the ASA, *id.* ¶ 15, Trigon provided documentation supporting Defendants' claim that "CNC is not a party to the Agreement," that Kaplan "acted only on behalf of the Trust, not CNC," and that Trigon even agreed "during the course of the negotiations that only the Trust, and not any of the participating companies, would be a party to the Agreement." *Id.* ¶ 26; Ex. B.[2]

"Starting on January 1, 2001 (the retroactive date of the ASA) and until the present, Trigon has provided administrative services to CNC, including processing claims and paying benefits as necessary, consistent with the ASA and the benefits brochure." *Id.* ¶ 21. The ASA provided that the Plan Administrator would have "ultimate responsibility" for interpretation of Plan provisions, claim determinations, and all Plan expenses, while Trigon would be responsible for "standard claim administration services." *Id.* Ex. D at 1, 2, 4. The Plan was "self-funded" up to and ex-

cept for certain stop-loss limits, to which an excess risk policy issued by Trigon would apply. *Id.* ¶¶ 14, 19; Ex. F.

On behalf of the Plan, Trigon issued to beneficiaries a brochure summary describing Plan benefits. *Id.* ¶ 20. In a section entitled "Cancellation or termination," it stated that "[y]our employer may cancel this health plan on the last day of any month by giving us a[sic] least 30 days written notice," and that "[t]ermination of the health plan automatically ends your coverage." *Id.* Ex. G at 50–51. In another section entitled "Timely Filing of Claims," it required that written notice of a claim be made within twenty days after the occurrence or loss, and written proof of loss be furnished within ninety days after the date of service. *Id.* Ex. G at 38. Failure to give this notice would not "invalidate or reduce any claim" as long as notice was "given as soon as reasonably possible," but in no event would the claim be paid if the proof of loss was received more than fifteen months after the date of service. *Id.* Ex. G. at 38.

To cover the cost of benefits and its administrative service fees, Trigon was to receive a monthly "pre-payment" in the amount of $77,500, beginning on March 19, 2001, along with additional month- and year-end settlement payments, if required, based on incurred costs. *Id.* ¶ 18; Ex. D at 16; Ex. E at 1–2. The monthly prepayments were to continue for two months after contract termination, and the month-end settlement payments were to continue for the twenty-four month "run-out" period after contract termination. *Id.* Ex. E at 2.[3] Under authority of the ASA and the

---

**2.** The Court is not bound to accept Trigon's assertion that CNC is a party to the ASA as a "factual" allegation, even on a motion to dismiss, to the extent that it is a legal conclusion and facts in the Complaint or the attached documents do not support the conclusion.

Nevertheless, while the issue may be relevant to Trigon's state law claims, it need not be finally resolved for purposes of the Court's decision to dismiss the federal claims.

**3.** The ASA provided that the Claims Administrator would continue to process claims, and

Letter Agreement, Trigon was authorized to directly debit a bank account in the name of the Trust each month to cover these costs and fees. *Id.* ¶ 18; Ex. D at 15; Ex. E.

"CNC terminated the Plan, effective December 31, 2001." *Id.* ¶ 3. In a November 21, 2001 letter from the Trust, Trigon received notice that CNC would terminate its health plan on November 30, 2001, and that all remaining health plans contributing to the Trust would terminate on December 31, 2001. *Id.* Ex. H at 1. The letter also stated that the Trust would terminate the ASA effective December 31, 2001, and that "[t]o the extent sufficient assets remain in the Trust, it [would] satisfy all obligations required of it pursuant to the Agreement." *Id.* Ex. H at 2. According to documentation provided by Trigon, Defendants claimed that "Trigon set the amount of premiums payable by each of the participating employers to the Trust" that "premiums deposited in the Trust in January through March 2001 [before debits by Trigon began] would build up a reserve sufficient to cover future claims," and that "the premiums were designed to fund any 'run out' claims following termination of the arrangement." *Id.* Ex. B at 2.

When Trigon sought to withdraw funds from the Trust bank account in February 2002, "the bank indicated that there were insufficient funds in the Trust's account," and there have been no funds in the Trust account for it to access since January 2002. *Id.* ¶ 24. Trigon nevertheless "continued to process benefits claims submitted after the Plan's termination for covered services rendered to CNC Plan beneficiaries before

December 31, 2001," and allegedly has "incurred over $150,000 in liabilities since CNC defaulted in its obligations." *Id.* ¶¶ 23, 25.

## II. DISCUSSION

### A. Jurisdiction and Venue

Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331 and ERISA section 502, 29 U.S.C. § 1132, and jurisdiction over the state law claims is invoked pursuant to 28 U.S.C. § 1367. Venue is proper under ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

### B. Standard of Review

A complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond all doubt that the plaintiff could not recover under any set of facts which could be proved. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). According to the motion to dismiss standard, factual allegations, once pled, must be accepted as true. *See Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The inclusion of conclusory legal terms, however, does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint do not support the legal conclusion, "since the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir.1994); *Trulock v. Freeh*, 275 F.3d 391, 405, n. 9 (4th Cir.2001). In evaluating a motion to dismiss, the court will consider not only the

---

the Plan Administrator would continue to fund the benefits administered by the Claims Administrator for a period of up to two years after termination of the ASA. *Id.* Ex. D at 9. However, the ASA also provided that the Claims Administrator would have "no further duty to process claims or issue payments" in the event that the Plan Administrator failed to make sufficient funds available, and the Letter Agreement provided that unprocessed claims would be suspended until payments were current. *Id.* Ex. D at 2; Ex. E at 1.

facts as set forth in the complaint, but also the documents attached to the complaint. *Arnlund v. Smith,* 210 F.Supp.2d 755 (E.D.Va.2002).

### C.  Analysis

The Court need look no further than the facts alleged in the Complaint and the documents attached to the Complaint to determine that Trigon cannot recover under Counts I, II, III or IV under any set of facts which could be proved. The remaining claims in Counts V and VI are governed by state law, and this Court will decline to exercise its supplemental jurisdiction over such claims.

### 1.  Counts I & II

This is not a lawsuit to recover benefits or to enforce a beneficiary's rights under the Plan pursuant to ERISA section 502(a)(1), since according to Trigon's allegations no benefits for covered services have been denied, and since in any event Trigon (as opposed to a beneficiary) is precluded from bringing such an action under ERISA. *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Virginia,* 102 F.3d 712, 715 (4th Cir.1996) ("Congress simply did not intend to provide fiduciaries with a cause of action for benefits" and consequently, a fiduciary could not recover benefits for a beneficiary under any subsection of section 502(a), including a claim for breach of fiduciary duty). Trigon alleges and brings its claims under Counts I and II as breach of fiduciary duty claims against CNC and the Trust under ERISA sections 502(a)(2) (Count I) and 502(a)(3) (Count II). Compl. ¶¶ 31–42. Therefore, to state a claim under Counts I and II, Trigon must seek relief *which is available* under sections 502(a)(2) and 502(a)(3); Trigon's claims must relate to the fiduciary duties it possesses, if any; and the Defendants must

have been performing a fiduciary function "when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

■ Much like the plaintiff's claim in *Coyne & Delany,* Trigon's *description* of its claims as breach of fiduciary duty claims does not alter the fact that what it is really seeking is monetary relief under the ASA and/or the Letter Agreement (including not only the cost of benefits but also fees for its services), or the fact that such contractual or other monetary relief for itself is not available to Trigon under either section 502(a)(2) or section 502(a)(3). *See Coyne & Delany,* 102 F.3d at 714 (noting that "Coyne's description of its claim as one for breach of Blue Cross' fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to Tyree," and despite the fact that the relief which was reversed by the Fourth Circuit in the case *was structured as an order to provide coverage* rather than an award of benefits or other direct monetary recovery). In addition, the nature of the relief sought by Trigon belies its assertion that it is acting as an ERISA fiduciary with respect to its claims in this action, which is required for it to have standing under both sections 502(a)(2) and (a)(3). 29 U.S.C. §§ 1132(a)(2) and (a)(3); *see also Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465 (4th Cir.1996).

■ "ERISA is a 'comprehensive and reticulated statute' which does not provide remedies other than those expressly set forth by Congress." *Coyne & Delany,* 102 F.3d at 713 (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Section 502(a)(2) provides a cause of action by a fiduciary "for appropriate relief under section 1109 of this title." 29 U.S.C.

§ 1132(a)(2). As Trigon ought to know, actions under this section must be brought in a representative capacity on behalf of the plan as a whole because "only relief 'for the plan itself' [is] available under section 502(a)(2)." *Russell,* 473 U.S. at 142, n. 9, 105 S.Ct. 3085; *Coyne & Delany,* 102 F.3d at 714–15 (citing *Russell,* 473 U.S. at 144, 105 S.Ct. 3085). *See also Edmonds v. Hughes Aircraft,* 1998 WL 228200, at *9 (4th Cir.1998).

It is clear that the relief Trigon seeks is not "appropriate relief" under section 502(a)(2). As already noted, the relief it seeks is money for itself *individually,* either as payment for its services or reimbursement for benefits provided to beneficiaries but unpaid under the ASA and/or the Letter Agreement. In addition, as alleged by Trigon, *the Plan was terminated* on December 31, 2001, and no beneficiary has in fact been injured. The relief sought by Trigon *could therefore only possibly* inure to its *own* benefit. Finally, Trigon's argument that allowing it to recover under section 502(a)(2) *would* inure to the benefit of the Plan because it could "potentially" be saved from lawsuits by beneficiaries is flawed because beneficiaries *already have* an adequate remedy for benefits under section 502(a)(1).[4] Where Congress has provided adequate relief for a beneficiary's injury elsewhere under ERISA, such relief would not normally be intended or "appropriate" under the statute. *See Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Coyne & Delany,* 102 F.3d at 716. Thus, the clear purpose and effect of Trigon's requested recovery is to compensate and benefit itself.

▆ The relief that Trigon seeks is likewise not appropriate relief under section 502(a)(3). A plaintiff's remedies under this section are limited to injunctive relief or "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). While *individual* relief (at least for beneficiaries) may in some instances be "appropriate" relief under this section, *see Varity,* 516 U.S. at 510, 116 S.Ct. 1065, it must still be *"equitable"* in nature. Monetary relief is not available under this section because it is the classic form of *legal* relief, notwithstanding a plaintiff's *characterization* of the relief it seeks as "equitable." *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 255–56, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties," but available relief under section 502(a)(3) is limited to "categories of relief *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages")); *see also Glencoe v. Teachers Ins. & Annuity Assoc.,* 69 F.Supp.2d 849, 853 (4th Cir.2000) (beneficiary's claim for "restitution" of tax benefit losses was really *compensatory* and thus not available under section 502(a)(3)).

In addition, as the U.S. Supreme Court recently clarified, any recovery under section 502(a)(3) is limited to *only* that equitable relief that was traditionally available *in an equity court.* For example, a plaintiff under this section *cannot* seek an "injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation

---

4. As acknowledged by the Defendants at oral argument, they do not contend that Plan *beneficiaries* could not have had a cause of action for benefits under section 502(a)(1) if and to the extent that benefits were incurred prior to the termination of the Plan but remained unpaid.

[which] was not typically available in equity," notwithstanding the plaintiff's claim that it seeks to enjoin an act or practice which violates the terms of a plan. *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210–11, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). A plaintiff cannot even seek *restitution* under this section if it is the *kind of restitution* that was traditionally available as a legal remedy in a case at law as opposed to in a case of equity. *Id.* at 212–13, 122 S.Ct. 708. Therefore, the insurance company in *Great–West* could not use this section to recover the cost of medical benefits paid to a beneficiary (who had also recovered from a car manufacturer in a state court action) pursuant to a plan reimbursement provision, since this was essentially a claim that the insurer was "contractually entitled to some funds for benefits that they conferred," and was therefore more akin to a claim for damages at law. *Id.* at 214, 122 S.Ct. 708.

In this respect, the case at hand is almost identical to *Great–West.* As noted earlier, Trigon asks for an injunction ordering Defendants to "fund the Plan" but concedes that it will use such funds to pay and reimburse itself. Trigon's claim, like Great–West's, is that Trigon is "contractually entitled to some funds for benefits [it] conferred" under its contracts with CNC and/or the Trust, and, as already stated, the relief it seeks is really monetary relief for itself. *Id.* Accordingly, Trigon cannot possibly recover under section 502(a)(3) under any set of facts that could be proved since the relief it seeks, no matter how it is characterized, is both monetary and contractual (*i.e.* legal) in nature.

■ The fact that the relief sought by Trigon is not available under either section 502(a)(2) or 502(a)(3) is enough to compel dismissal of Counts I and II. However, these counts should also be dismissed because Trigon is not acting in a fiduciary capacity with respect to its claims in this action, and the action taken by CNC and/or the Trust which is the subject of the Complaint is likewise not a fiduciary function. Fiduciary status under ERISA is not an "all-or-nothing concept." *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 61 (4th Cir.1992). Under ERISA, "a 'person is a fiduciary with respect to a plan,' and therefore subject to ERISA fiduciary duties, 'to the extent' that he or she 'exercises any discretionary authority or discretionary control respecting management' of the plan [or its assets] or 'has any discretionary authority or discretionary responsibility in the administration' of the plan." *Varity,* 516 U.S. at 498, 116 S.Ct. 1065; 29 U.S.C. § 1002(21)(A).

■ "[I]nclusion of the phrase 'to the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition," and this "statutory language plainly indicates that ... a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman,* 969 F.2d at 61. Employers, plan sponsors, and even "persons who provide services to an ERISA plan" may wear "two hats," acting and being judged by fiduciary standards with respect to some claims and functions, but not others. *Pegram,* 530 U.S. at 225, 120 S.Ct. 2143. "Consequently, '[a] fiduciary's standing is not for any and all purposes; rather, a fiduciary has standing to bring actions related to the fiduciary responsibilities it possesses.'" *Coyne & Delany,* 98 F.3d at 1465. Furthermore, a person will only be judged *by fiduciary standards* under a breach of fiduciary duty claim to the extent that the person was performing a fiduciary function when taking the action subject to complaint. *Pegram,* 530 U.S. at 226, 120 S.Ct. 2143. In order to determine this, a com-

plaint must "be parsed very carefully to understand what acts . . . are alleged to be fiduciary in nature." *Id.* at 227, 120 S.Ct. 2143.

Even if Trigon has or *ever* had authority to act as a fiduciary, it does not have standing to bring this action because the action is unrelated to any fiduciary responsibilities *it now possesses.* In its Complaint, Trigon alleges that it is a "fiduciary of the Plan pursuant to ERISA § 3, 29 U.S.C. 1002(21)(A)(i).[5] In the course of exercising its responsibilities as Claims Administrator to the Plan, Trigon exercises discretionary authority over the management and administration of the Plan and also authority and control respecting the management and disposition of the Plan's assets." Compl. ¶ 36. Trigon has also alleged, however, that the Plan terminated on December 31, 2001 and that there have been no funds in the Trust bank account for it to access since January of 2002. *Id.* ¶¶ 3, 24. Furthermore, according to the ASA, which was attached to the Complaint, Trigon had "no further duty to process claims or issue payments" in the event that the Plan Administrator failed to make sufficient funds available. *Id.* Ex. D at 2.

Assuming without deciding that the funds that were in the Trust's bank account were "Plan assets" and that Trigon's withdrawal of such funds pursuant to the ASA and the Letter Agreement constitut-

ed the exercise of "authority or control respecting management or disposition of its assets," *see* 29 U.S.C. § 1002(21)(A)(i), Trigon's plain allegations establish that Trigon *no longer has access* to such assets. Furthermore, assuming (again without deciding) that any actions Trigon took or responsibility it had with respect to the Plan constituted the exercise of "discretionary authority or discretionary control respecting management of such plan" or "discretionary responsibility in the administration of such plan,"[6] Trigon clearly lost the ability to exercise any such authority or responsibility when the Plan terminated and ceased to be funded, relieving Trigon of any further "duty to process claims or issue payments."

Thus, Trigon was left with *no* discretionary authority or control with respect to management of the Plan or its assets, and *no* discretionary responsibility with respect to its administration. In addition, as already stated, Trigon cannot possibly succeed, under *any* set of facts which could be proved, in establishing that it is pursuing this suit for money damages *for itself* under its contracts with CNC and/or the Trust *in a fiduciary capacity on behalf of the Plan* or its participants since the relief it seeks will not inure to their benefit. Therefore, it is clear that Trigon has no standing to bring its breach of fiduciary claims under Counts I and II.

**5.** Although Trigon's cite is limited to subsection (i) of section 1002(21)(A), which does *not* include "administration," the Court will nevertheless consider its claim that it is a fiduciary under the administration subsection (iii) as well as the plan/assets management subsection (i). However, subsection (iii) requires that Trigon actually have discretionary responsibility under relevant documents, and is not dependent upon conduct. *See* 29 U.S.C. § 1002(21)(A)(i) and (iii).

**6.** This, in fact, is *highly doubtful.* Trigon's authority under the ASA was for "standard claim administration services," while the Plan Administrator retained "ultimate responsibility" for interpretation of Plan provisions, claim determinations, and all Plan expenses. Compl. Ex. D at 1, 2, 4. Performance of such ministerial duties and processing claims does *not* involve sufficient discretion to render a party an ERISA fiduciary. *See, e.g., Hansen v. North Trident Regional Hosp. Inc.,* 60 F.Supp.2d 523, 527 (D.S.C.1999) (citing 29 C.F.R. § 2509.75–8).

Finally, even if Trigon had standing under sections 502(a)(2) and (a)(3) to pursue its requested relief, Counts I and II still fail to state a claim under Rule 12(b)(6) because neither CNC nor the Trust was performing a fiduciary function when it took the actions subject to this complaint. Trigon alleges that CNC and the Trust failed to "provide adequate funding for Plan benefits and administrative services provided by Trigon during the run-out period, and their actions constitute breaches of their fiduciary duties." Compl. ¶¶ 38, 42. However, while acknowledging, again, that *beneficiaries* may have had a cause of action against the Defendants *for benefits* under the Plan after its termination, neither termination of the Plan nor its subsequent cessation of funding could give rise to a *breach of fiduciary duty claim* since such actions are not "fiduciary" actions under ERISA.

"[P]lan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Furthermore, when plan sponsors undertake these actions, *they do not act as fiduciaries* but are analogous to the settlors of a trust. *Lockheed Corp. v. Spink*, 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). This is because the act of terminating a plan and the subsequent cessation of its funding "cannot [possibly] be an act of plan 'management' or 'administration'" under the definition of an ERISA fiduciary. *Id. (citing Varity*, 516 U.S. at 505, 116

S.Ct. 1065); *see also* 29 U.S.C. § 1002(21)(A). Likewise, if there are no more plan assets (*e.g.,* no more funds in the Trust bank account), there can no longer be any management or disposition of such assets.[7] In addition, ERISA section 409(b) specifically provides that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty ... if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). Since the alleged failure to fund the Plan arose after termination of the Plan, Defendants could not possibly have been acting as fiduciaries with respect to the Plan at that time. For all of these reasons, Counts I and II will be dismissed for failure to state a claim upon which relief can be granted.

### 2. Count III

In Count III of the Complaint, brought against CNC, the Trust, and the Plan, Trigon urges the Court to "recognize a federal common law remedy available to Trigon to correct CNC's breach of the ASA's run-out provisions and the funding requirements in the Letter Agreement." Compl. ¶ 44. It argues that "[a]bsent a federal remedy to permit third-party administrators to recover against ERISA fiduciaries and other interested parties for their violations of the terms of agreements for administrative services, third-party administrators would be unwilling to provide such services, and services critical for the prompt and efficient delivery of benefits under ERISA would become unavailable." *Id.* However, creation of a federal remedy

---

7. Trigon did not allege that there were any other *Plan assets* or Trust funds other than those in the bank account which were depleted after January of 2002. In order for a company's general funds (such as, for example, funds of CNC) to become "plan assets," the company must take steps sufficient to cause the plan to gain a *beneficial interest in*

particular assets "under ordinary notions of property rights," such as the transfer to a separate trust account. *See Arevalo v. Herman*, 2002 U.S. Dist. LEXIS 7076, at 23–25 (E.D.Va.2002) (quoting 99 Op. Dep't of Labor 08A (1999)). There is no general duty to earmark corporate monies to fund a benefit plan. *Id.* at 16.

is not necessary or appropriate in this case, since Trigon is not precluded from pursuing a state-law remedy for breach of contract. *See Sentara Virginia Beach Gen'l Hosp. v. Lebeau*, 182 F.Supp.2d 518, 520 (E.D.Va.2002) (federal common law may be developed "when ERISA fails to address an issue and the state law governing the issue has been preempted").[8]

■■■■■■ Courts are to " 'address claims of preemption with the starting presumption that Congress does not intend to supplant state law.' " *Coyne & Delany*, 98 F.3d at 1467 (citations omitted). A "court cannot make a preemption determination solely 'based on the form or label of the law . . . . The inquiry into whether a state law 'relates to' an ERISA plan or is merely 'tenuous, remote, or peripheral' requires a court to look at the facts of [a] particular case.' " *Griggs v. E.I. Dupont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001) (citations omitted).

In *Coyne & Delany*, the court held that ERISA did not preempt a plan sponsor's "garden-variety malpractice claim" asserted against a third-party administrator *in its non-fiduciary capacity* as an insurance professional for its negligent failure to procure a promised replacement plan. 98 F.3d at 1472. While the court determined that the claim might "require the court to examine some provisions of an ERISA plan, [it nevertheless turned] on duties generated by Virginia common law." *Id.* The court explained that the state law involved did not "relate to" an employee benefit plan because it did not threaten Congress's goal of nationally uniform administration of employee benefit plans, it did not regulate the terms of a plan or the type of benefits a plan may provide, and it.

did not address faulty plan administration. *Id.* at 1471.

In this case, Trigon seeks payment for services it claims it rendered but was not paid for under the ASA and/or the Letter Agreement. Its claim, therefore, is simply a claim to be paid money it says it is owed under a contract. It does not implicate the goal of uniform plan administration or regulate the terms of a plan or the type of benefits a plan may provide. Nor does Trigon's claim involve issues related to faulty plan administration, distinguishing its claim from the claim in *Tri–State Machine, Inc. v. Nationwide Life Ins. Co.*, 33 F.3d 309 (4th Cir.1994) (suit alleging breach of contract against an administrator of an employee benefit plan *for paying claims not covered under the plan* and otherwise not administering the plan according to its terms necessarily "related" to the plan). Finally, as discussed at length already in this Opinion, neither Trigon nor the Defendants acted in any fiduciary capacity in relation to Trigon's state-law claims. Therefore, such claims are not pre-empted, and there is no need to create a federal remedy. For these reasons, Count III must be dismissed for failure to state a claim upon which relief can be granted.

### 3. Count IV

■■■■ In Count IV, Trigon alleges a claim for attorney fees under ERISA and federal common law against CNC, the Trust, and the Plan under ERISA section 502(g)(1). Under this section, the Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Trigon asserts that such an award is "warranted in this action because Trigon is compelled

---

8. Although Trigon's request for a federal remedy is predicated only on its breach of contract claim, the Court has determined that its claim for fraud and misrepresentation under Count VI is likewise not preempted by ERISA.

to resort to the courts to correct Defendants' flagrant disregard for obligations under ERISA and the Plan." Compl. ¶ 47. However, the Court has determined that any complaint *Trigon* has against the Defendants in this action is *contractual in nature* and not in disregard of any obligations to fiduciaries under ERISA or the Plan. Furthermore, since Trigon cannot state a claim for relief under Counts I, II, or III, it is not otherwise entitled to an award of attorney's fees.

### 4. Counts V & VI

In Counts V and VI, Trigon alleges breach of contract and fraud claims under Virginia law. After dismissal of Counts I through IV, there are no remaining claims over which the Court has original jurisdiction. Ordinarily, if all "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also* 28 U.S.C. § 1367(c)(3). Because no overriding interest in judicial economy or convenience exists, and the Court finds that this case properly belongs in state court, *see Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Darcangelo v. Verizon Communications,* 292 F.3d 181 (4th Cir.2002), the Court will therefore decline to exercise its supplemental jurisdiction over the remaining state law claims and will dismiss them without prejudice to re-file in state court.

### III. CONCLUSION

For the reasons already stated, the Court will grant Defendants' Motion to Dismiss Counts I, II, III, and IV. Counts V and VI will be dismissed without prejudice to re-file in state court. An appropriate Order shall issue.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.