James BOIN, Plaintiff,

v.

**VERIZON SOUTH, INC., et al., Defendants.**

Civil Action No. 02–F–332–S.

United States District Court, M.D. Alabama, Southern Division.

Sept. 23, 2003.

---

Richard P. Rouco, Whatley Drake, LLC, Birmingham, AL, for plaintiff.

Barry V. Frederick, Donna E. Brooks, Lehr, Middlebrooks, Price & Proctor, P.C., Birmingham, AL, Karen M. Wahle, Shan-

non M. Barrett, O'Melveny & Myers, LLP, Washington, DC, for defendants.

### ORDER AND MEMORANDUM OPINION

FULLER, District Judge.

### I. INTRODUCTION

On March 15, 2002 the Plaintiff, Mr. James Boin (hereinafter "Boin"), filed a complaint against the Defendants, Verizon South, Inc., as successor in interest to GTE South, Inc., GTE South, Inc. Southeast Plan for Hourly Paid Employees' Pensions, and GTE Service Corporation Employee Benefits Committee seeking declaratory and monetary relief (Doc. # 1). GTE South, Inc. Southeast Plan for Hourly Paid Employees' Pensions (hereafter "the Plan")[1] is an ERISA qualified employee benefits plan. Verizon South, Inc., as successor in interest to GTE South, Inc., (hereafter "GTE" or "Verizon") is the Plan sponsor and GTE Service Corporation Employee Benefits Committee (hereinafter "the Benefits Committee") is the Plan Administrator. Boin claims that he was an employee of GTE and is entitled to retirement benefits under the Plan. The Defendants claim that Boin is not entitled to benefits under the Plan because he is not an "Employee" as defined by the plan. The Plaintiff has exhausted his administrative remedies. This case is currently before the court on Defendants' Motion for Summary Judgment, filed on April 2, 2003 (Doc. # 26). Although there is no dispute of material fact, the record before the Court is silent on facts material to the court's decision and therefore the Defendants have failed to meet their burden and are not entitled to judgment as a matter of law. Accordingly, for the reasons discussed fully below, the Defendants' Motion for Summary Judgment (Doc. # 26) is due to be DENIED.

### II. JURISDICTION

Jurisdiction over this matter is asserted pursuant to 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 1132(e)(1) (ERISA). The parties do not contest personal jurisdiction or venue.

### III. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment may be entered on a claim only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

---

**1.** There are several relevant versions of the Plan. When necessary, the court will use the year of enactment to distinguish between different versions of the plan, e.g. "The 1976 Plan." When it is not necessary to distinguish between versions, the court will simply use "The Plan."

The burden then shifts to the nonmovant to make "a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). To satisfy this burden, the nonmovant cannot rest on its pleadings, but must, by affidavit or by other means, set forth specific acts showing that there is a genuine issue for trial. Furthermore, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993).

The court's function in deciding a motion for summary judgment is to determine whether there exists genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When a court considers a motion for summary judgment, it is to refrain from deciding any material factual issues. All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996); *Early*, 907 at 1080.

## IV. FACTS[2]

### A. The Plaintiff's Work History

From 1967 to 1974, the Plaintiff, Boin, was employed by GTE as an installer of telephone equipment. During this time he was on the GTE payroll and received his paychecks directly from GTE. He remained in this position until 1974 when he suffered an on the job injury. When Boin returned to work in March of 1976, his installer position had been filled by another employee. GTE informed Boin that he could continue to work as an installer if he returned as a contractor. Boin agreed to this arrangement and immediately began to work in substantially the same capacity as before his injury. In 1989, Boin became a facility engineer, again under a contractor arrangement. He worked in this capacity at least until 2001.

From the time Boin returned to work in 1976 until at least 2001, he was not on the GTE payroll. Instead, he was paid by a series of companies that contracted with GTE. However, Boin received his assign-

---

**2.** The Defendants assert that "most" of the information provided in Boin's affidavit and reiterated in Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. # 31) was never provided to the plan administrator and therefore cannot be used by the Court in reaching its decision. Although the Defendants correctly present the law, *see Jett v. Blue Cross & Blue Shield, Inc.* 890 F.2d 1137, 1139–40 (11th Cir.1989), by failing to object to specific portions of the Plaintiff's version of the facts and failing to identify evidence showing that this information was missing from the administrative record, the Defendants have failed to meet their burden. Therefore, the Court will not strike the Plaintiff's version of the facts under the *Jett* rule. The court notes, however, that the Plaintiff's version of the facts ultimately has no bearing on its present ruling because it is the Defendant's failure to present sufficient evidence that makes summary judgment inappropriate.

ments and work directions from GTE supervisors, was supervised by GTE managers, and used GTE tools. He looked to GTE supervisors for vacation scheduling, pay raises, rate of pay, work hours information, and the identity of the contractor who was to send him his paycheck. Boin never filled out an application with a contracting company and had almost no interaction with managers from the contracting companies. He never received any day to day instruction or on site supervision from the contracting companies. He worked at least 1,000 hours every year of his employment.

*B. Denial of Benefits*

On July 27, 2000, Boin wrote to GTE, the plan administrator, to request an application for pension benefits. The GTE Benefits Center (hereinafter "the Center"), which is staffed by a contractor that performs certain administrative tasks for the Plan, processed Boin's request. After much correspondence between the Center and Boin, as well as additional research by the Center, on August 30, 2001, the Center[3] sent the Plaintiff a letter denying his request for pension benefits under the Plan and explaining the reasons for that denial. The denial letter explained that Boin was not covered under the Plan at any time after 1974 because only "Employees" as defined by the Plan were covered and Boin did not fit that definition. Although Boin did fit the definition of "Employee" prior to his termination in 1974, under the terms of the Plan in effect at that time, he forfeited any accrued benefits when he left his employment prior to retirement.[4] The Center did not research Boin's status as a common law employee

because they believed it to be irrelevant. They concluded that even if Boin were a common law employee, he did not meet the definition of "Employee" according to the terms of the Plan and therefore was not entitled to benefits. The letter also informed Boin that he could appeal the denial to the Verizon Claims Review Committee.

In a letter dated October 29, 2001, Plaintiff requested that the Verizon Claims Review Committee (hereinafter "the Claims Committee" or "the Committee") review the Center's denial of benefits and Boin specifically requested that the Claims Committee consider his status as a common law employee. The contractor who prepared appeals for the Committee followed the usual procedure in preparing Boin's claim. First, the contractor prepared a claims file containing all of the relevant correspondence, employment records and Plan documents. Then the contractor condensed and organized all of this information for the Committee, collecting the relevant material into a bound volume called an "agenda item". Each member of the committee received a copy of the agenda item approximately one week before the appeals hearing.

On February 8, 2002 the Claims Committee met and, after discussion, decided to deny Boin's claim. In a letter dated February 18, 2002, the Committee informed Boin of its decision and explained its reasoning. First, the Committee listed six findings of fact. They found that since his termination in February 1975[5],

1. Boin had been paid only by the contractor for whom he worked.

---

3. By now called Verizon's GTE Benefits Center (hereinafter "the Center").

4. ERISA was not in effect prior to 1976.

5. This conflicts with Boin's contention that he stopped working in 1974, but the discrepancy is immaterial.

2. Boin was never determined by GTE to be employed in an employer-employee relationship with GTE.

3. Plaintiff has not received a "regular and stated compensation" from GTE.

4. Boin's basic compensation for services rendered on behalf of GTE has not been paid directly by GTE, but rather has been paid by the contractor for whom he worked

5. Boin has not been considered to be a "regular employee" of the company.

6. Boin has not been paid directly by the company.

The Committee then went on to quote the definitions of "Employee" in all of the relevant Plan documents. Finally, applying the findings of fact to the quoted definitions, the Committee concluded that after 1976, Boin did not meet the definition of "Employee" in any of the relevant Plan documents and therefore was not entitled to benefits under the Plan. They also concluded that although Boin met the definition of "Employee" prior to 1976, under the terms of the plan in effect at that time he had forfeited his benefits. Like the Center, the Committee did not research Boin's status as a common law employee because they believed it to be irrelevant. The Committee considered its decision to be final and binding.

### C. The Relevant Plan Provisions

Although the Court will discuss the relevant plan provisions in the Discussion section below as necessary, it will be useful for reference to list them here. Three provisions of the Plan are relevant to this case. First, the definition of "Employee" is centrally important. Second, the explanation of "hours of service" is necessary to fully understand the definition of "Employee". Third, the provision granting the Committee discretion to interpret the Plan also plays a part in the analysis. Because the Plan was modified several times from 1976 to the present, it is necessary to consider the provisions in each of the Plan documents in effect during Boin's employment.

### 1. The definition of "Employee"

In all of the Plans in effect at various times from 1976 onward, the terms of each Plan stated that an individual must be an "Employee" to participate in the Plan. The definition of "Employee" was amended several times over the years.

In the Plan in effect from 1976 to 1979 (hereinafter "the 1976 Plan"), the definition of Employee read:

Employee' means any employee of the Company who is in an hourly-rated position and who receives a regular and stated compensation, other than a retainer, from the Company, provided however, that no employee shall fail to qualify as an Employee if he completes at least 1,000 hours of service as an employee of the Company in any calendar year.

In the Plan in effect from 1979 to 1984 (hereinafter "the 1979 Plan") the definition of "Employee" was modified to add the requirement that the individual be employed in an employer-employee relationship. It read:

'Employee' means any individual employed in an employer-employee relationship by the Company in an hourly rated position who receives a regular and stated compensation, other than a retainer, from the Company; provided, however, that no employee of the Company shall fail to qualify as an Employee if he completes at least 1000 Hours of Service during any 12 consecutive months in the Eligibility Computation period.

The Plan was modified again in 1984 and then again in 1985, but there were no significant changes to the definition of Employee.

In the Plan in effect from 1987 to 1989 (hereinafter "the 1987 Plan") the definition of Employee was again modified. A provision was added excluding "leased employees" from the definition of "Employee." It read:

> 'Employee' means any individual employed in an employer-employee relationship by the Company ... in an hourly rated position who receives a regular and stated compensation, other than a retainer, from the Company; provided that no employee of the Company shall fail to qualify as an Employee if he completes at least 1,000 Hours of Service in the Eligibility Computation Period. The term 'Employee' shall not include a "leased employee" within the meaning of Section 414(n) of the Code; provided, that this sentence shall be effective as of January 1, 1984, as if it had been adopted as part of the Plan in effect on that date.

In the Plan in effect from 1989 to 2001 (hereinafter "the 1989 Plan") the definition of Employee was modified once again. A clause was added to the end of the definition excluding employees whose contracts state that they are not eligible to participate in the plan and also individuals who are not paid directly by the company. It read:

> 'Employee' means any individual employed in an employer-employee relationship by the Company in an hourly-rated position other than an individual employed in a division or unit designated by the Company to be a non-participating division on the basis of uniform and non-discriminatory rules, who receives a regular and stated compensation, other than a retainer, from the

Company, or an individual whose Vesting Service and Accredited Service have continued to accrue in accordance with Sections 4.2(d) and 4.6(d). No employee of the Company who otherwise qualifies as an Employee pursuant to the preceding sentence shall fail to qualify as an Employee if he completes at least 1000 Hours of Service during any Eligibility Computation Period. The term Employee shall not include a leased employee within the meaning of section 414(n) of the Code (this provision shall be effective as of January 1, 1984, as if it had been adopted as part of the Plan in effect on that date); and shall not include an Employee who is retained by the company pursuant to a contract or agreement that specifies that Employee is not eligible to participate in the Plan. The term Employee shall not include an individual whose basic compensation for services rendered on behalf of the Company is not paid directly by the Company.

The definition of "Employee" was modified a final time in the Plan in effect from 2001 to the present (hereinafter "the 2001 Plan"). A provision was added excluding common law employees. It read:

> 'Employee' means any individual determined by the Company to be employed in an employer-employee relationship by the Company in an hourly-rated position other than an individual employed in a division or unit designated by the Company to be a non participating division or unit designated by the Company to be a non-participating division or unit on the basis of uniform and non-discriminatory rules, who receives a regular and stated compensation, other than a retainer, from the Company, or an individual whose Vesting Service and Accredited Service have continued to accrue in accordance with Sections 4.2(d) and

4.6(d). An employee of the Company who does not receive regular and stated compensation, but otherwise qualifies as an Employee pursuant to the preceding sentence, shall not fail to qualify as an Employee if he completes 1000 Hours of Service during any Eligibility Computation Period. The term "Employee" shall not include a "leased employee" within the meaning of section 414(n) of the Code (this provision shall be effective as of January 1, 1984, as if it had been adopted as part of the Plan in effect on that date); an individual who is retained by the Company pursuant to a contract or agreement that specifies that the individual is not eligible to participate in the Plan; an individual whose basic compensation for services rendered on behalf of the Company is not paid directly by the Company; or an individual who is not classified as a common-law employee by the Company, regardless of any subsequent reclassification of such individual as a "common law" employee of the Company by the Company, and governmental agency, or any court.

### 2. The definition of "hours of service"

Because each of the definitions of "Employee" has a clause or sentence concerning "1000 hours of service," the definition of "hours of service" is relevant to understanding the meaning of "Employee." The 1976 Plan states, "Each employee shall be credited an hour of service for: (a) each hour for which an employee is directly or indirectly paid or entitled to payment by the Company or any Affiliate for performance of duties...." In all of the later Plans, the definition remains the same in all pertinent respects.

### 3. Provisions Granting Discretion to Interpret the Plan

As discussed fully below, whether a body has discretion to interpret the plan has bearing on which standard this Court must use in reviewing that body's denial of benefits. The 2001 Plan states that the Benefits Committee has "discretionary power" to "interpret the Plan and to decide all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, and omissions" and to "determine the right of any person to benefits under the Plan and the amount of such benefits." Plans in effect from 1989 on had substantially similar language. Prior to 1989, the Plan did not expressly state that the Benefits Committee had "discretionary" authority, but it did grant the Benefits Committee the power to interpret the Plan and resolve any ambiguities. For all relevant time periods, the Benefits Committee delegated its power to interpret the Plan to the Claims Committee.

## V. DISCUSSION

### A. Plan Participation

 Boin asserts a claim under ERISA as a participant of an ERISA plan. To be a participant, a plaintiff must meet the two prong test set out in *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1340 (11th Cir. 2000). First, the plaintiff must be an employee. *Id.* This prong involves and independent review by the court of the employment relationship, and common law employee status is sufficient to fulfill this requirement.[6] *Id.* Second, the plaintiff

---

**6.** A multi-factor test has been developed in the common law to distinguish an employee from an independent contractor. All of the following factors are relevant in determining whether an individual qualifies as a common

law employee: the skill required; the hiring party's right to control the manner and means by which the product is accomplished; the source of instrumentalities and tools; the location of the work; the duration of the rela-

must be eligible to receive benefits under the plan according to the language of the plan. *Id.* This prong requires an examination of the terms of the company's ERISA plan. *Id.* This prong is necessary because ERISA does not require companies to include common law employees in their Plan. *Id.* Unlike the first prong, the second prong does not necessarily involve an independent review by the court. *See id.* Rather, one of three standards of review may be used. *HCA Health Services v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001).

In this case, the Defendants do not dispute Boin's claim to common law employee status for purposes of this motion. Therefore, the court assumes that the Plaintiff satisfies the first prong of the test. The parties disagree, however, on the second prong of the test. According to the terms of the Plan, Boin must meet the Plan's definition of "Employee" to receive benefits under the Plan. As discussed above, the Claims Committee has decided that Boin is not an "Employee." Boin maintains that he does meet the definition. The parties also disagree on which standard should be used to review the Committee's interpretation of the plan. Boin maintains that the Court should conduct a *de novo* review, while the Defendants argue for an arbitrary and capricious standard. Therefore, before the court can decide whether Boin satisfies the second prong of the test, the correct standard of

reviewing the Claims Committee's decision must be determined.

## B. The Standard of Review for Benefits Denial Decisions

■ Courts review benefits denial decisions using one of three standards. *HCA Health Services,* 240 F.3d at 993. If the terms of the Plan do not grant the deciding body discretion to interpret the terms of the Plan, the Court reviews the body's decision *de novo.* *Id.* If the Plan does grant discretion, then the Court generally uses an arbitrary and capricious standard of review. *Id.* If, however, there is a conflict of interest between the deciding body and the best interests of plan participants, then despite a grant of discretion the Court will use a heightened arbitrary and capricious standard of review. *Id.*

In *HCA Health Services v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001), the Eleventh Circuit Court of Appeals set out a multi-step analysis to determine the standard of review. First, the Court must determine whether the Plan grants the Administrator discretion to interpret the plan. In this case, the language of the Plan clearly grants the Benefits Committee the power to interpret the terms of the Plan. The 2001 Plan states that the Benefits Committee has "discretionary power" to "interpret the Plan ... including the right to remedy

---

tionship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is a business; the provision of employee benefits; and the tax treatment of the hired party. *See Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 323–24, 112

S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Wolf v. Coca-Cola Co.,* 200 F.3d 1337, 1340 n. 1 (11th Cir.2000). The vast majority of these factors weigh in favor of Boin being classified as a common law employee, and the Court would be inclined to find that Boin is a common law employee if the issue were before the Court. However, because the Defendants concede for purposes of this motion that Boin is a common law employee, the Court need not decide the issue.

possible ambiguities, inconsistencies, and omissions." There is no question that this language is sufficient to warrant an arbitrary and capricious standard of review. *See Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 912 (11th Cir.1997); *Vann v. National Rural Electric Cooperative Assoc. Retirement and Security Program,* 978 F.Supp. 1025, 1032–33 (M.D.Ala.1997). The Benefits Committee has delegated its full interpretive power to the Claims Committee, and thus their decision is entitled to an arbitrary and capricious standard of review.

■ Boin, however, makes two arguments against using an arbitrary and capricious standard of review, both of which are unavailing. First, Boin argues that while the 1989 and 2001 plans grant the Benefits Committee sufficient interpretive power, earlier plans do not, and therefore the Committee's interpretation of the language in earlier plans should be reviewed de novo. The Defendants counter that the 2001 Plan should control because the Committee made its decision while this plan was in effect, and further, even if the earlier plans are relevant, their language is sufficient to trigger arbitrary and capricious review. The Court agrees with the Defendants that the language in all versions of the Plan grants the Benefits Committee the requisite interpretive authority. The Plans in effect prior to 1989 grant the Benefits Committee the power to interpret the plan and resolve ambiguities, but the word "discretionary" is not used. There is no requirement that the word "discretionary" be present in order to trigger the lower standard of review. *See Seales v. Amoco Corp.,* 82 F.Supp.2d 1312, 1317–18 (M.D.Ala.2000). The power to interpret and resolve ambiguities is clearly enough discretion to warrant an arbitrary and capricious standard of review. *Id.* Therefore, although the Court is inclined to agree with the Defendants that the 2001 Plan is controlling, it is unnecessary for the Court decide the issue.

Second, Boin argues that the Claims Committee failed to interpret the full definition of "Employee," and consequently the text not addressed by the Committee should be interpreted by the Court *de novo.* The Plaintiff points out that in the denial letter, the Committee does not explicitly address the "1000 hours of service" clause that appears in the 1976, 1979, 1984 and 1985 Plans. In the 1976 plan, the clause reads "... provided however, that no employee shall fail to qualify as an Employee if he completes at least 1,000 hours of service as an employee of the Company in any calendar year". Substantially similar clauses appear in subsequent Plans up to and including the 1985 Plan. (In the 1989 and 2001 Plans the 1000 hours provision was changed into a separate sentence that Boin concedes is not applicable to him). Although the denial letter quotes the 1000 hour clauses from each of the definitions of "Employee," the letter does not explicitly discuss that part of the definition in its commentary and the findings of fact do not deal with facts pertaining to whether or not the Plaintiff completed 1000 hours of service. Therefore, Boin concludes, the 1000 hours provisions in the Plans up to and including the 1985 Plan were not interpreted by the Committee at all and should be interpreted by the Court *de novo.* Stated another way, Boin contends that there is no interpretation to defer to so there is no rational way to apply the arbitrary and capricious standard.

No Eleventh Circuit authority supports this position, and the Court notes that Boin failed to cite any authority whatsoever in support of his argument. The Court was able to locate only a handful of decisions from other Circuits that address the

issue and none are applicable to the facts of this case[7]. Given the lack of legal authority for this argument, it is unavailing.

■ Because the Claims Committee had the requisite discretion to interpret the Plan, the Committee's decision is entitled to arbitrary and capricious review unless the Court finds that there is a conflict of interest warranting a heightened standard. *HCA Health Services,* 240 F.3d at 993. However, before determining whether there is a conflict of interest, the court must follow a series of steps. *Id.* Initially, the court must decide whether the Plan Administrator's interpretation is "wrong" under a *de novo* standard. *Id.* If the Administrator is "right," the Defendants are entitled to summary judgment and the inquiry ends. *Id.* However, if the interpretation is "wrong," the Court must then determine whether the Plaintiff has offered a reasonable interpretation. *Id.* If

so, then the next question is whether the Defendant's wrong interpretation is nonetheless reasonable. *Id.* If this is the case, the Defendant's interpretation is entitled to deference unless there is a conflict of interest.

In the case at hand, a reasonable fact finder could determine that the Committee's interpretation is wrong under a *de novo* standard and that the Plaintiff has offered a reasonable interpretation. As discussed later, the Court has insufficient facts to determine whether the Defendant's interpretation is reasonable[8]. Nonetheless, for both parties' benefit, the court will continue the analysis in order to give the parties a full comprehension of the material facts missing from the record.

■ Assuming Defendant's interpretation passes the above inquiry, it is entitled to an arbitrary and capricious review unless there is a conflict of interest. *Id.* Boin

7. *See Seman v. FMC Corp. Retirement Plan for Hourly Employees,* 334 F.3d 728, 733 (8th Cir.2003) (*De novo* review afforded where review panel fails entirely to act on participant's properly filed appeal); *Schadler v. Anthem Life Insurance Co.,* 147 F.3d 388, 396–98 (5th Cir.1998) (Case remanded to the administrator where the administrator failed entirely to interpret the terms of the plan because it decided at the outset that the claimant had not enrolled in the policy); *Mansker v. TMG Life Insurance Co.,* 54 F.3d 1322, 1327–29 (8th Cir.1995) (*De novo* review afforded where administrator failed entirely to decide whether medical expenses were of the kind covered by the plan because it decided at the outset that the plaintiff's claims were not covered); *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384, 1388–89 (9th Cir.1994) (*De novo* review afforded where body given authority to exercise discretion under the terms of the Plan failed entirely to review the claim).

8. The Court notes that this inquiry overlaps with the application of the arbitrary and capricious standard of review using the *Cagle* factors. See *Application of the Arbitrary and Capricious Standard* below. It may be that

the *HCA Heath Services* analysis is only necessary when there is a possible conflict of interest. If there is a conflict, the *de novo* review is helpful in applying the heightened standard. But, when there is no conflict, the *de novo* review becomes meaningless because regardless of whether the interpretation is wrong, the Court will not overturn it unless it is arbitrary and capricious. Accordingly, in cases where conflict of interest is not at issue, it would appear to be more efficient to skip the *de novo* review and simply apply the *Cagle* factors. A recent Eleventh Circuit Appeals Court case implicitly suggests that this approach be employed. *See Turner v. Delta Family–Care Disability and Survivorship Plan,* 291 F.3d 1270 (11th Cir.2002) (Eleventh Circuit Appeals Court case decided after *HCA* that does not use the full *HCA* analysis). The clear language of *HCA Health Services,* however, directs the court to do a de novo review "regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies." Given this mandate, the Court is compelled to proceed through the entire *HCA Health Services* analysis.

does not argue that there is a conflict of interest and because the Plan assets are held in trust, the facts clearly would not support such a finding. *See Turner v. Delta Family–Care Disability and Survivorship Plan*, 291 F.3d 1270, 1273–74 (11th Cir.2002) (No conflict of interest where monies are paid from a trust funded through irrevocable periodic contributions); *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir.1997) (No conflict of interest where benefits are paid from a trust through periodic, nonreversionary contributions). Therefore, the Court will review the Claim's Committee's decision using and arbitrary and capricious standard. Before applying the arbitrary and capricious standard to the facts, it is necessary to dispose of a preliminary issue related to the standard of review. Boin urges the Court to use the rule of *contra proferentem*,[9] meaning that if an ambiguity exists and there are two plausible interpretations, the terms should be construed against the drafter. *See Florence Nightingale Nursing Service, Inc. v. Blue Cross/ Blue Shield of Alabama*, 41 F.3d 1476, 1481 (11th Cir.1995). Although the Eleventh Circuit Court of Appeals has held that the rule of *contra proferentem* is generally applicable to ERISA plan interpretation cases, *Lee v. Blue Cross/ Blue Shield of Alabama*, 10 F.3d 1547, 1549–52 (11th Cir.1994), its use is practically limited to cases in which a heightened arbitrary and capricious standard is used. *See Vann*, 978 F.Supp. at 1042–43; *see also Cagle v. Bruner*, 112 F.3d 1510, 1519 (11th Cir.1997). As the Eleventh Circuit Court of Appeals explained, "the arbitrary and capricious standard of review would have

little meaning if ambiguous language in an ERISA plan were construed against the [Plan]." *Cagle*, 112 F.3d at 1519. Because the Court is not using the heightened arbitrary and capricious standard of review, the rule of *contra proferentem* has no place in our analysis.[10]

## C. Application of the Arbitrary and Capricious Standard

 Under an arbitrary and capricious standard of review, the Court is limited to deciding whether the Claims Committee's interpretation was made "rationally and in good faith." *Cagle*, 112 F.3d at 1518. In *Cagle v. Bruner*, the Eleventh Circuit Court of Appeals laid out several factors that may help the court determine whether an interpretation meets this standard. Those factors applicable to this case are: (1) the factual background of the determination, including any inferences of bad faith; (2) the uniformity of the Plan's construction, meaning how the Committee has interpreted and applied the Plan in the past; (3) possible concerns with the way unexpected costs may affect the future financial health of the Plan; (4) the internal consistency of the Plan; and (5) the reasonableness of the Committee's interpretation. *Id.*

The first two factors weigh in favor of finding that the Committee's interpretation was not arbitrary and capricious. First, there is no evidence of bad faith on the Committee's part. In contrast, the only evidence on the issue shows that the Committee, and the Center before it, followed the usual appeals procedure and

---

**9.** Alternatively spelled "contra proferentum" in case law.

**10.** The court notes that *contra proferentem* may be used in determining whether the Plaintiff's interpretation is reasonable. *HCA*

*Health Services*, 240 F.3d at 994 n. 24. However, the court did not find it necessary to invoke this principle in order to find that Boin had been given a reasonable interpretation of the Plan.

that this procedure was undertaken in good faith Boin claims that the Defendants acted arbitrarily and capriciously by failing to investigate his status as a common law employee and the court construes this as an allegation of bad faith. The Defendants, however, have presented evidence showing a good faith reason for failing to investigate Boin's common law employee status, namely that they believed it to be irrelevant to their determination. Boin has pointed to no evidence in rebuttal. Therefore, Boin has not met his burden of showing that there is a genuine issue as to the Defendant's good faith. Second, the Defendants have uniformly interpreted the plan to exclude contracted workers. In the history of the Plan, no contracted employee has ever received benefits, and, in the one other case in which an employee claimed benefits based on a common law employee theory, the benefits were denied.

The court has insufficient factual evidence before it to determine how the last three factors weigh in the analysis. As to the third factor, the Defendants have asserted that if all common law employees are allowed to receive benefits, the Plan will incur substantial unexpected costs that could deplete the Plan's resources. But, they point to no evidence to support this assertion and therefore they have failed to meet their burden.

Likewise, there is insufficient evidence regarding the fourth factor. The plan would be internally inconsistent if the meaning of "hours of service" as explained in the Plan is at odds with the Committee's interpretation of "Employee." Boin asserts exactly this argument. In the 1976 Plan the 1000 hours of service clause in the definition of "Employee" reads, "... provided however, that no employee shall fail to qualify as an Employee if he completes at least 1,000 hours of service as an employee of the Company in any calendar year." Elsewhere in the plan, hours of service is explained as follows: "Each employee shall be credited an hour of service for: (a) each hour for which an employee is directly or indirectly paid or entitled to payment by the Company or any Affiliate for performance of duties...." If an "Affiliate" includes the entities that paid Boin, the Committee's interpretation of "Employee" as excluding contracted employees would be inconsistent with the explanation of what constitutes an hour of service. The provision allowing "indirect" payment may also be at odds with the Committee's interpretation that an "Employee" must be paid directly by the Company. In their reply brief, the Defendants attempt to explain away the hours of service clause in the definition of "Employee" by reiterating the argument that it was meant to modify the rest of the definition. They point to affidavit testimony to this effect and quote the 2001 Plan in which the hours of service clause was changed such that it clearly modified the beginning of the definition. But, the Defendant's fail to address the explanation of "hour of service" found elsewhere in the Plan. Their argument and supporting testimony at best shows that the Defendants did not intend to create an internal inconsistency. It does not, however, show that one was not inadvertently created. To show that there is no internal inconsistency, the Defendants must harmonize the Committee's interpretation of "Employee" with the explanation of "hours of service" found elsewhere in the plan. This they did not do. Therefore, the Defendants have failed to meet their burden as to this factor and the court is accordingly unable to determine its weight in the analysis.

Finally, the Court is also unable to determine how the fifth factor weighs in the analysis. Although reasonableness is a separate factor in the analysis, whether a particular interpretation creates an inter-

nal inconsistency necessarily has some bearing on whether that interpretation is reasonable or unreasonable. Therefore, although the court is inclined to conclude that the Defendant's interpretation of the 1000 hours of service clause in Plans up to the 1989 Plan is less than reasonable, the court will reserve judgment on this issue at this time.

Because the Defendant failed to point the court to evidence regarding at least two of the *Cagle* factors, the Defendants are not entitled to judgment as a matter of law. Accordingly, the Defendants Motion for Summary Judgment is due to be denied.

## VI. CONCLUSION

For the reasons discussed, the Defendant's Motion for Summary Judgment (Doc. # 26) is DENIED.